446 So.2d 585 (1984)
Larry Aubron HARRIS
v.
STATE of Mississippi.
No. 54726.
Supreme Court of Mississippi.
February 22, 1984.
*586 Michael D. Cooke, Lake Wales, Fla., David R. Sparks, Sparks & Colburn, Tupelo, for appellant.
Bill Allain, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, HAWKINS and DAN M. LEE, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Tishomingo County wherein the appellant, Larry Harris, was found guilty of manslaughter. Harris was sentenced to serve sixteen years in the custody of the Mississippi Department of Corrections. From that conviction and sentence he now brings this appeal. We reverse.
It is undisputed that on the evening of Sunday, February 15, 1981, Larry Harris and his nephew, Gary Berryman, went to the house of Clyde Harris, Larry's uncle. Larry went in the house and Gary waited outside in the truck. Moments later, a shot was fired and Clyde Harris was fatally wounded. Larry Harris then ran to a nearby field where he stayed and drank whiskey for approximately an hour and one-half to two hours at which time he returned to the Clyde Harris residence and surrendered himself.
At trial, Larry testified that the shooting was an accident. He stated that the .25 caliber pistol with which his uncle was killed was intended as a replacement gun for his uncle. Larry wanted to give Clyde the pistol because he had lost one of his shotguns sometime previously. He testified that as he pulled the gun out of his back pocket and handed it to his uncle the gun accidentally discharged.
This version of the events was contradicted only by a statement Larry Harris gave to law enforcement officers shortly after his surrender. In that statement, Harris states that he went to see his uncle about a dog. In his statement Harris says that when his uncle asked him "What dog?" Larry reached in his pocket to pull out the gun to give Clyde and that it must have scared Clyde because "The first thing I know he was trying to hit me and the gun, like I say, it shot him." Under the state's version of the events Larry Harris killed his uncle in a dispute over the dog.
The two central questions to this appeal revolve around certain motions made prior to trial. The first of these was a motion to suppress Harris' statement. Harris claims that at the time he gave the statement he was so intoxicated that he could not knowingly and intelligently waive his right to counsel. Two hearings were held on the motion to suppress, each of which resulted in a different conclusion.
At the first suppression hearing Officer David Huggins, an investigator with the Mississippi Highway Patrol, testified that he conducted the interrogation of Harris the evening of the shooting. Officer Huggins said that he read Harris his rights and that Harris appeared to understand them. In Huggins' terms, "He was in good shape." Huggins stated that Harris had told him that he had had a drink but he did not appear to be under the influence of alcohol. Huggins indicated that Harris' eyes were clear and that his speech was *587 distinct with nothing to indicate any physical or mental impairment. Huggins tape-recorded the interrogation and the tape was played at the suppression hearing.
Larry Harris testified on his own behalf at this hearing. He stated that he had been drinking whiskey for a day and a half before the shooting. He also stated that he had been taking pills which were prescribed for his wife's cold during the same period of time. Harris denied having any memory of the events which transpired before he entered his uncle's house. Neither could he remember signing the waiver of rights, hearing his rights read to him, nor signing the statement.
Officer Terry Sherron testified that the interrogation of Harris began thirty to forty-five minutes after the arrest. Officer Sherron stated that in his opinion Harris was under the influence of alcohol or medication at the time he gave his statement. Sherron based his opinion upon his observation of Harris' eyes were red and his speech was slow. In Sherron's opinion Harris did not understand what he (Harris) said in the interrogation.
Sheriff Amos Estes also testified at this hearing. The sheriff initially stated that he believed that Harris understood what was happening during the interview; however, he later stated that he could not say for certain that Harris appreciated what was happening. Sheriff Bates testified that Harris had red eyes and a mumble in his talk. He stated that Harris was not deliberately talking slow and that in his opinion Harris acted like he was under the influence of alcohol or drugs.
Following this testimony the court ruled that Harris' confession would be suppressed. The court stated in its opinion that its decision was based upon the equivocating testimony of Officers Sherron and Sheriff Bates, one of whom testified that Harris did not understand what was happening at the interrogation, and the other who testified that he was not certain that Harris understood. An order was entered suppressing the confession.
Shortly thereafter, the state filed a motion for rehearing. In this motion the grounds for the rehearing were: (1) Deputy Sherron's testimony was a surprise; (2) Officer Huggins was called away following his testimony and unavailable for recall at the time of the initial hearing; (3) the existence of additional witnesses who observed Harris sometime before he gave the statement. On January 7, 1982, the court entered an order granting the motion for rehearing and setting a new hearing date.
At the second hearing, essentially the same testimony was elicited with the addition of three new witnesses for the state. Deputy Mike Kemp testified that he saw Harris in a patrol car shortly after his apprehension. He stated that he heard Harris tell other officers where the gun involved in the shooting was located. Kemp was of the opinion that Harris' speech was not slurred and that he was not under the influence of drugs. Kemp admitted that his contact with Harris was "minimal."
Roy Crowe, a family member present in the Clyde Harris household following the shooting, testified that when Larry Harris returned to the household he was not drunk. Crowe admitted however that he had observed Harris for less than two minutes from a distance of twelve to fourteen feet. Crowe described his contact with Harris at the time as "I heard him say a few words and walk in and out."
The Rev. Jerry George was also present in the Clyde Harris household following the shooting. He stated that he smelled liquor on Larry Harris' breath but that Harris was not "staggery." Rev. George stated that Harris appeared to be drinking but was not drunk and that his speech was not slurred. Rev. George admitted that he could not tell anything about Harris' mental state at the time he gave his statement. In fact, Rev. George admitted that he was around Harris for only about one minute and had no direct conversation with him.
Following the taking of this additional testimony and the reexamination of all those present at the first suppression hearing, *588 the judge ruled that although Larry Harris was under the influence at the time he gave his statement, he was not intoxicated. The judge stated that in his opinion the tape-recording of the interrogation does not indicate that Harris was intoxicated. Therefore, he ruled that Harris' statement was given freely and voluntarily.
Because we must reverse Harris' conviction on his second assignment of error, we do not address specifically whether the trial judge abused his discretion in granting a second suppression hearing or whether he erred in his finding that the statement was freely and voluntarily given. Rather, we suggest to the learned trial judge that upon proper motion a new suppression hearing be held prior to the retrial of this cause.
Harris' second assignment of error particularly troubles this Court and requires us to reverse his conviction. This assignment of error stems from Harris' second pretrial motion. That motion, a motion to produce, requested all books, papers, documents, accounts, letters, photographs and all other tangible items of evidence. On October 27, 1981, the trial court entered an order requiring that the state "produce all items requested in defendant's motion to produce." This the state failed to do.
At trial, the state attempted to introduce both the pistol and the projectile removed from Clyde Harris' body. At that point, Harris' attorneys objected and there was an argument by counsel to the trial court on the admissibility of those items. Neither the gun, the projectile nor the report from the Mississippi Crime Lab was produced for the defense. Following the argument, the trial court held that he would allow the items to be introduced in evidence and issued the following ruling:
Well, frankly, gentlemen, if there were an issue here, that this gun did the shooting, I would sustain the objection, that it would not be allowed to be presented because the gun and the projectile had not been presented as required under the order and the results of the tests either one, I think, would be sufficient but since it is not an issue here, whether or not this gun did the shooting, I am going to allow the testimony to proceed and overrule the objection because of those reasons, that there has been a change here in this county of the county attorneys in the last six months and we have different county attorney here in Tishomingo County than what we had when this evidence was being processed so I am going to be rather lenient in letting this evidence in but I do want the record to reflect that it appears to the court that there is really no issue in this case that this is the gun that fired the fatal shot and for that reason I can see no reason not to let it in, it is not felt to be prejudicial. The objection will be overruled. (sic)
Therefore, the trial court allowed the weapon to be introduced in evidence because there was no dispute that this was the weapon that fired the fatal shot. This ruling reflects that the trial court completely misunderstood the intention of Harris' motion to produce. As Harris' sole defense was that the gun discharged accidentally, his purpose in having the weapon produced was to provide him with an opportunity to have it inspected to determine its susceptibility to accidental discharge. Although his efforts to do so were sanctioned by the order of the trial court directing the state to produce the weapon, they were later stymied by the combination of the state's refusal to produce the weapon and the court's subsequent ruling. The fact that there had been a change in county attorneys was wholly irrelevant to the defendant's right to require production. The court is not free to suspend the rules of discovery of the court because of a change in elected officials.
In Box v. State, 437 So.2d 19 (Miss. 1983), this Court reversed Box's conviction because of the state's failure to comply with its obligation to produce under Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice. In Box, the trial court held a hearing on Box's discovery motion four *589 months prior to trial. Box had requested a list of the state's witnesses and production of physical and tangible evidence in the custody of the state. Although his discovery request did not expressly use the word "photographs," photographs did constitute part of the physical and tangible evidence which the court ruled Box was entitled to. The state never produced the photographs and at trial they attempted to introduce them into evidence. The trial court allowed them to be introduced over Box's objection. On appeal, this Court said: "Prosecuting attorneys, as well as defense attorneys, must recognize the obligation to abide by discovery rules. A rule which is not enforced is no rule." Box, 437 So.2d at 21. The holding in Box was expressly limited to the facts under that case; however, the facts in the instant case closely parallels it. In both cases the defense requested physical and tangible evidence in the custody of the prosecution. In both cases the trial court entered an order requiring the prosecution to produce the evidence. And in both cases the state attempted to introduce the evidence at trial after having failed to produce it.
In other recent cases we have reversed convictions where the state has failed to come forward with material it was obliged to produce. Ford v. State, 444 So.2d 841 (Miss. 1984); Tolbert v. State, 441 So.2d 1374 (Miss. 1983); Morris v. State, 436 So.2d 1381 (Miss. 1983); Jackson v. State, 426 So.2d 405 (Miss. 1983).
While it is true that the above cited cases deal with the failure to produce a statement of the defendant, the violation of the rule requiring discovery is no less obvious in the instant case. Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice in effect at the time of Harris' trial read in pertinent part as follows:
The prosecution shall disclose to each defendant or to his attorney, and permit him to inspect, copy, test, and photograph upon request and without further order the following:
(1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial;
(2) Copy of any recorded statement of the defendants to any law enforcement officer.
Upon a showing of materiality to the preparation of the defense, the court may require such other discovery to defense counsel as justice may require.[1]
Therefore, upon motion of appellant and the order of the circuit judge in this case to produce all tangible things, the prosecution had the affirmative duty of producing the weapon. They are not now free to claim that the defense had merely to request production one more time. Failure of the state to produce the weapon was a violation of both Rule 4.06 and the court's order and had the effect of stymieing Harris' ability to present his defense. Failure to comply with an order to produce renders that material inadmissible at trial and its wrongful admission renders a conviction reversible.
Harris also argues that the trial court was in error in failing to apply the Weathersby rule. In 1933 this pronounced the well-known rule of the case of Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933). In Weathersby this Court stated that: "Where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge." Harris argues that because he was the only witness to the shooting his version must be accepted as true. While he would have a good argument if his tape-recorded statement had been suppressed, the conflict between his statement and his testimony at trial leaves him unable to invoke the Weathersby rule.
*590 Harris also argues that his conviction is reversible because of certain statements made by the trial court during the course of the trial. Because we have no doubt that these statements will not be repeated at retrial, we do not feel compelled to address the issue.
Based on all of the foregoing, we hold that Larry Aubron Harris' conviction of manslaughter is hereby reversed and remanded to the Circuit Court of Tishomingo County.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
NOTES
[1] Note that the version of Rule 4.06 now in effect would require disclosure of tangible items simply upon request of the defendant, without an order of the court.