467 So.2d 220 (1985)
Charles William ACEVEDO
v.
STATE of Mississippi.
No. 54738.
Supreme Court of Mississippi.
April 10, 1985.
*222 Boyce Holleman, Michael B. Holleman, Gulfport, for appellant.
Bill Allain, Atty. Gen. by Henry C. Clay, III, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and SULLIVAN and ANDERSON, JJ.
SULLIVAN, Justice, for the Court:
Shortly before 4:00 a.m. on June 17, 1981, Charles William Acevedo drove his wife, Sue, a/k/a "Tory", from work at a Biloxi strip joint to their Biloxi home. On arrival, an argument between them developed into a struggle in the vehicle for control of a revolver that ended in Tory's death. Acevedo was convicted of the manslaughter of his wife and sentenced to twenty years imprisonment without parole under Mississippi Code Annotated § 99-19-81 (Supp. 1984). His appeal asserts nine errors including non-compliance with Uniform Criminal Rule 4.06 and prosecutorial misconduct. We find that these two assignments of error have merit and require reversal for a new trial. Neither requires review of the weight or sufficiency of the evidence, and so we set forth only the facts pertinent to the discussion of the two issues.

I.
Immediately after the shooting, Acevedo drove Tory to the Gulf Coast Community Hospital emergency entrance and carried her in. Officer Robert Burris, a Biloxi policeman who was present by chance, used a gunpowder residue kit to take swabbing samples from Tory's hands as she lay in the emergency room, still breathing and connected to a CAT scan device. Her hands had not been washed. This test was not conducted on Acevedo because shortly after he arrived at the emergency room he washed the blood off his hands so that the gunpowder would also have been removed.
Dr. William Kinard, forensic chemist with the Bureau of Alcohol, Tobacco, and Firearms in Washington, D.C., ran tests on the gunpowder residue samples collected by Officer Burris from Tory's hands. If the tests revealed the presence of barium and antimony, the elements comprising the primer of a round of ammunition, this would be evidence that Tory's hands were in contact with the gun when it was fired. The results of Dr. Kinard's tests were contained in a report provided to defense counsel pursuant to a request under Mississippi Uniform Criminal Rule 4.06 for copies of any reports, scientific tests, experiments or comparisons by the state's expert witnesses. The report read:
RESULTS OF EXAMINATION:
The amount of antimony found on the hand swabs was insufficient to indicate the presence of gunshot residue; therefore, no testing for barium was conducted.
From these findings, no conclusion can be drawn as to whether the subject did or did not handle or fire a weapon.
Prior to trial, defense counsel spoke with Dr. Kinard and verified that his testimony would not vary from the written report. At trial, Dr. Kinard stated that two conclusions that can be drawn in this situation are that either Tory's hands were washed prior to the sampling, or her hands were not in close proximity of the weapon when it was fired. He said that if it were shown that her hands had not been washed prior to sampling, then one may conclude that they had not been in close proximity to the weapon when fired. When Dr. Kinard first testified to these alternative conclusions, defense counsel objected that his testimony directly contradicted his written report. The objection was overruled and defense counsel cross-examined Dr. Kinard at *223 length on whether he was changing from his official report. Dr. Kinard stood by what he said in the report but added that the conclusions he gave were his expert opinion based on experience.
In Acevedo's motion for a new trial, he produced an affidavit and written opinions of four experts, including the original developer of the test, all of whom stated that while the written report of Dr. Kinard was correct, his testimony at trial was pure speculation. The essence of the four experts' opinions is summarized in the following quotation: "An expert cannot conclude that the absence of metals (a negative finding) is proof (a positive finding) that this person has not discharged a gun recently."
The trial court's memorandum opinion overruling the motion for new trial acknowledged that Dr. Kinard's testimony surprised Acevedo and prejudiced his defense. The court concluded that the state had complied with Criminal Rule 4.06 despite the failure of the report to reflect what the court termed Dr. Kinard's "conclusive" opinion that gunshot residue would have been present on the victim's hands if the shooting had occurred in the manner described by Acevedo. The court relied upon the fact that defense counsel had the opportunity to question the expert prior to trial and to cross-examine him using his own report.
On appeal, Acevedo asserts that where an expert's report furnished pursuant to Criminal Rule 4.06 states that no conclusions can be drawn from the evidence, it violates the discovery rule for the expert to contradict his own report at trial because Acevedo was deprived of the opportunity to prepare effective cross-examination and secure his own experts to contradict the state's expert. Acevedo points out that the trial judge acknowledged that the expert's testimony both surprised Acevedo and prejudiced his defense. Nothing in Dr. Kinard's report or his pretrial discussion with defense counsel hinted that he would testify that Tory's hands were not around the revolver when it fired. Acevedo argues that had Dr. Kinard's written report been updated to reflect his conclusions at trial, defense counsel would have brought in one or more of the expert witnesses listed in his motion for new trial.
The purpose of the Uniform Criminal Rule 4.06 is to avoid unfair surprise to either the state or the defendant at trial. Harris v. State, 446 So.2d 585, 589 (Miss. 1984); Ford v. State, 444 So.2d 841, 843 (Miss. 1984). In Box v. State, 437 So.2d 19 (Miss. 1983), we said with regard to discovery under Rule 4.06:
The question presented here brings into direct conflict two important interests. First there is prosecution's interest in presenting to the jury all relevant, probative evidence. On the other hand, there is the accused's interest in knowing reasonably well in advance of trial what the prosecution will try to prove and how it will attempt to make its proof which, of course, includes the names of persons the state expects to call as witnesses.
This state is committed to the proposition that these conflicting interests are best accommodated and that justice is more nearly achieved when, well in advance of trial, each side has reasonable access to the evidence of the other. See Rule 4.06 supra; Rules 26-37, Miss.R. Civ.P.
Id. at 21.
The majority of our cases alleging violations of Uniform Criminal Rule 4.06 involve either non-disclosed defendant's statements, See Jackson v. State, 426 So.2d 405 (Miss. 1983); Tolbert v. State, 441 So.2d 1374 (Miss. 1983); Ford v. State, 444 So.2d 841 (Miss. 1984); or non-disclosure of names of witnesses, see Overstreet v. State, 369 So.2d 275 (Miss. 1979); Thomas v. State, 377 So.2d 593 (Miss. 1979); Gallion v. State, 396 So.2d 621 (Miss. 1981); Spots v. State, 427 So.2d 127 (Miss. 1983); Box v. State, 437 So.2d 19 (Miss. 1983); Downs v. State, 449 So.2d 783 (Miss. 1984). We have also considered alleged violations of Rule 4.06 where tangible items were withheld prior to trial. Spots v. State, supra; Box v. State, supra; Love v. State, 441 So.2d *224 1353 (Miss. 1983); Harris v. State, 446 So.2d 585 (Miss. 1984).
Under Uniform Criminal Rule 4.06 the prosecution must also disclose crime lab reports. If the defendant invokes discovery he must reciprocate by producing for the prosecution reports or statements of his expert witnesses made in connection with the case. Moreover, Rule 4.06 imposes upon both prosecution and defense a continuing duty to promptly notify the other party of the existence of any additional material or information which is subject to disclosure. Where the state has failed to come forward with material it was obliged to produce, that evidence is inadmissible, and its wrongful admission renders a conviction reversible. Harris v. State, 446 So.2d at 589.
Acevedo's argument is that the prosecution learned that Dr. Kinard's tests yielded the conclusion that either Tory's hands were washed prior to taking the samples or her hands were not around the weapon when fired, but violated its continuing duty to promptly notify defense counsel of this additional information supplementing the results of the crime lab report. Acevedo asserts, citing Box v. State, supra, that withholding Dr. Kinard's surprise conclusion that Tory's hands were not around the weapon deprived him of reasonable access to the evidence the state would use to convict him.
The state's assertion that the issue is procedurally barred for failure to state the specific ground of the objection at trial is not well taken. We find that the basis for Acevedo's objection  contradiction between an expert's conclusions at trial and his pretrial lab report produced under Rule 4.06  is sufficiently specific in the context in which it arose, despite Acevedo's failure to expressly cite Rule 4.06. Murphy v. State, 453 So.2d 1290 (Miss. 1984). The state's brief does not address the issue as a violation of discovery but rather as a matter of Dr. Kinard's credibility as a witness. The fact that Acevedo was permitted to cross-examine Dr. Kinard using the crime lab report, asserts the state, leaves the jury to weigh the inconsistencies between his oral testimony and his written report. The state asserts that no prejudice resulted from this surprise conclusion by Dr. Kinard, since the jury was free to judge his credibility as a witness. Matthews v. State, 394 So.2d 304 (Miss. 1981); Pate v. State, 419 So.2d 1324 (Miss. 1982); Griffin v. State, 381 So.2d 155 (Miss. 1980).
We conclude that the information contained in Dr. Kinard's lab report produced under Uniform Criminal Rule 4.06 is subject to the same requirement of updating or supplementation as lists of the state's witnesses or production of defendant's statements. The state violated its continuing duty to supplement discoverable matters with newly discovered material or information when it failed to inform defense counsel of Dr. Kinard's abandonment of the conclusions in his crime lab report in favor of a conclusion that the victim's hands had either been washed or else were not in proximity of the weapon when fired. As the affidavits in the motion for new trial demonstrate, Acevedo would have been able to call other experts in the same field to rebut Dr. Kinard's conclusions had defense counsel had notice of the new conclusions. This omission is beyond the power of correction by cross-examination, since defense counsel had no notice or opportunity to prepare for an effective cross-examination. Therefore, the trial court erred in overruling Acevedo's objection to Dr. Kinard's trial testimony, which was highly prejudicial to the defense. We must reverse this conviction and remand for a new trial, at which Dr. Kinard's testimony to the same effect will be admissible, but Acevedo will have had the opportunity to muster evidence to the contrary.

II.
If we were not already required to remand this case for a new trial of the discovery issue, Acevedo's allegations concerning prosecutorial misconduct, standing alone, would compel the same result. We will not dwell at length on this assignment *225 of error since Smith v. State, 457 So.2d 327, 333-36 (Miss. 1984), provides a recent summary of the law as well as examples of a number of disapproved prosecutorial tactics. We write here only to add new examples and offer guidance to the trial court that is faced with repeated disobediance of its rulings.
The prosecutor asked defense witness Dena Cryer where was her former husband, to which she replied "Which one?" The prosecutor answered, "The one in the penitentiary in Texas?" Objection was made and sustained. The prosecutor next asked her whether her son had been in the Biloxi jail. Finally the prosecutor asked whether a certain man was her good friend, and followed with "He is presently serving two life sentences for murder?" The trial court overruled Acevedo's motion for mistrial and admonished the jury to disregard the questions. In Wood v. State, 257 So.2d 193, 198 (Miss. 1972), we condemned as immaterial the attempted impeachment of a witness by eliciting her daughters' juvenile delinquency problems. In this case, impeachment is attempted in the same manner by bringing up imprisonment of the witness's son, ex-husband, and good friend. A prosecutor may properly impeach a witness's credibility by showing the witness has prior convictions, Miss. Code Ann. § 13-1-13 (1972), but not by showing that the witness's relatives or acquaintances have prior convictions. Wood v. State, supra.
During one critical portion of Acevedo's testimony describing the struggle in the car and specifically her physical position when the weapon fired, the following colloquy occurred:
Q. At that point in time,  I can't question this witness and all that talking, Judge.
BY THE COURT:
Don't you all be talking over there.
BY MR. NECAISE:
Can't we discuss the case?
BY THE COURT:
Keep your voices down if you do. I could hear you up here.
Rule 5.01 of the Uniform Criminal Rules of Circuit Court deals with courtroom decorum and requires an attorney to "act in a fit, dignified, and courteous manner which will not degrade or interfere with the administration of justice." Deliberate attempts by counsel to distract or divert a jury's attention from a witness's testimony amount to interference with the administration of justice under the purview of this rule.
Acevedo's testimony began with a recital of his convictions, including the charge, date, and whether it was a felony or misdemeanor. On cross-examination, the prosecutor asked whether he had been in the penitentiary a few times. Objection was sustained and the jury was admonished to disregard. The prosecutor asked Acevedo to repeat his convictions and the trial court directed the prosecutor not to go over the convictions except those not already given. The prosecutor had Acevedo repeat a narcotics and forgery conviction in order to bring out an additional count under each indictment. With regard to the narcotics violation, the prosecutor asked, "Well, you got nine years on each, didn't you?" The court sustained an objection that punishment was inadmissible and directed the jury to ignore the sentence. With regard to the forgery conviction, the court ordered the prosecutor not to go into the separate counts of a conviction already given. The prosecution asked Acevedo to recite his misdemeanor convictions and the court ordered him to go on to something else. Instead, the prosecution continued to ask about a misdemeanor weapons assault conviction and brought in the details of the crime, even after the trial court ordered him not to do so.
The right to cross-examine a defendant about his former convictions is not foreclosed by the defendant's admission on direct examination that he has been convicted of a crime. Wells v. State, 288 So.2d 860, 864 (Miss. 1974). A prosecutor is entitled to ask the defendant of what crimes or *226 misdemeanors he has been convicted. If he fails to fully enumerate all of his prior convictions, then the district attorney could properly ask the defendant if he denies being convicted of a particular crime on a particular date in a particular court. Id. at 864. The right to cross-examine a defendant about his convictions does not include the right to go into the details of the former crime nor the punishment given. Wells v. State, supra; Murray v. State, 266 So.2d 139, 141 (Miss. 1972); Allison v. State, 274 So.2d 678 (Miss. 1975). In the case sub judice, the prosecutor, in questioning Acevedo about convictions which he had already enumerated, brought out both the details of one crime and the punishment in another, despite prior warnings by the court that such questioning was not allowed. We have previously condemned a prosecutor's repeated return to a line of questioning in the face of adverse rulings by the trial court. Smith v. State, 457 So.2d at 335; Wood v. State, 257 So.2d at 198.
The prosecutor's persistent discussion in closing argument of the grand jury proceedings resulting in Acevedo's indictment, despite objection and instruction not to do so, was error. We have condemned references to grand jury censures in cross-examination of a defendant in Barlow v. State, 233 So.2d 829, 832 (Miss. 1970). The prosecutor's statement that Acevedo's case was presented to the grand jury as murder likewise could only have been used to degrade and prejudice the defendant in the eyes of the jury. Failure to abide by the trial court's ruling in this matter was prosecutorial misconduct. Smith v. State, supra; Wood v. State, supra.
While a prosecutor is allowed wide latitude in cross-examination, Hollins v. State, 340 So.2d 438, 441 (Miss. 1976); Boyce v. State, 231 Miss. 847, 97 So.2d 222 (1957), and in closing argument, Bullock v. State, 391 So.2d 601, 610 (Miss. 1981), fundamental fairness requires that a defendant should not be subjected to testimony and tactics which are highly prejudicial and inflammatory as shown in the record of this case. It is clear from the frequent instances where the prosecutor continued a forbidden line of questioning or argument that the trial court's admonitions to the jury were not effective to remove from the jury's mind the prejudice created by the prosecutor.
The fundamental duty of a trial judge in a criminal case is to ensure that the trial is fair. The trial judge attempted to do so in this case but his attempts failed. When faced with conduct by counsel that is so blatant as to endanger the fairness of the trial and impair the administration of justice, the trial judges in this state are at liberty to excuse the jury from the court-room and take such steps as are necessary to compel the proper conduct of counsel. See Uniform Circuit Court Rules 1.01 and 1.02; Uniform Criminal Rule of Circuit Court 5.01. In this case, such action by the trial judge would have been appropriate.
From a thorough review of the record and briefs, we are satisfied that the remaining assignments of error are without merit. Due to the non-compliance with Uniform Criminal Rule 4.06, and the prosecutorial misconduct in this case, we are forced to reverse this conviction and remand for a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and ANDERSON, JJ., concur.