520 So.2d 497 (1988)
Harold WHITE
v.
STATE of Mississippi.
No. 57548.
Supreme Court of Mississippi.
February 17, 1988.
Billy W. Shelton, Tupelo, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen., by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and GRIFFIN, JJ.
DAN M. LEE, Presiding Judge, for the Court:
The grand jury of Lee County indicted Harold White on February 6, 1985, for the crime of rape of a child under the age of 12 pursuant to Miss. Code Ann. § 97-3-65(1) (1972 & Supp. 1986) (The statute subsequently has been amended as to the age of the victim, but the amendment has no effect on the present case.) On November 19, 1985, the jury found White guilty but was unable to fix the penalty. On November 22, 1985, Circuit Court Judge Thomas J. Gardner III sentenced White to a term of 31 years imprisonment. Motion for j.n.o.v. or a new trial was overruled on December 7, 1985. From this conviction and sentence White appeals assigning the following errors:
I. THE TRIAL COURT ERRED IN REFUSING TO GRANT APPELLANT'S MOTION IN LIMINE TO PREVENT THE INTRODUCTION OF TESTIMONY REGARDING OTHER ALLEGED INCIDENTS OF SEXUAL ACTIVITY BETWEEN APPELLANT AND ALLEGED VICTIM.
II. THE TRIAL COURT ERRED IN REFUSING TO GRANT APPELLANT'S REQUEST FOR DECLARAL OF A MISTRIAL UPON THE PREJUDICIAL REMARKS OF THE PROSECUTING ATTORNEY.

*498 III. THE TRIAL COURT ERRED IN REFUSING TO ALLOW THE INTRODUCTION OF TESTIMONY REGARDING THE SEXUAL ACTIVITY OF THE ALLEGED VICTIM'S MOTHER.

FACTS
On the morning of November 7, 1984, Sharon White found 15 pairs of her 11-year-old daughter's panties in a plastic laundry bag hidden under her mattress. The panties were stained with a bad discharge. Her daughter had previously been treated for discharge during that summer, and it had cleared up. When she talked to her daughter about the stained underwear, her daughter said she had been sexually active, most recently on October 30, 1984. She told her mother that the incident had taken place in their home at 7:30 a.m. on the morning of October 30 while her mother was at school, and that her father had forced her to have sex with him.
When Sharon White found out about the incident, she packed up the children, went by the pawn shop to hock her jewelry, then drove to Gulfport to stay with her family. The next morning she obtained a protective order. On November 9, she drove back to Tupelo and filed charges in Lee County against her husband. On advice of the district attorney she took her daughter to a local gynecologist. Her daughter was terrified and would not cooperate, so she took her to the child's regular pediatrician. He prescribed Triconol for treatment of trichomonas. Mrs. White then returned to the Coast with her daughter.
Mrs. White had earlier been treated for the same disease, trichomonas, and treatment was also prescribed for her husband, the defendant in early October of 1984. He denied having a problem, but when Mrs. White returned later in November to pick up her things, he had apparently taken the medication because the bottle was empty.
D.M., the victim, testified that on October 29, 1984, she was home with her father, brother and sister. She asked her father if she could go to a basketball game, to which he replied that she could go, but she had to "give him a piece." She went to the game. The next morning she was sick and stayed home from school. Her father said she still had to "give him a piece" after the brother and sister left for school, whereupon he took her to the living room and raped her. He told her if she told anyone he would beat her, kill her mother, and he would get put in jail. He then got dressed and left for work. D.M. also testified that White had forced her to perform these acts two to three times a week for about six months, always at home when her mother was gone. She finally told her mother when her mother confronted her about the panties.
Dr. Martin Herman, a pediatrician in Tupelo with extensive training in dealing with battered children, testified that he examined D.M. on November 9. His examination revealed sexual activity and a trichomonas infection, inflammation of the vaginal area, no hymen, and that her vaginal area looked like that of a married woman. D.M.'s behavior on that examination was that of anxiety, upset and a cowed posture. She was also uncommunicative. He testified that this was typical behavior of an abused child. He also testified that trichomonas is transmitted sexually in most all cases, although it could be transmitted on towels, toilet seats, infected clothing, if transmitted quickly and at body temperature. Apparently the parasite dies quickly.
Dr. Joe Pryor, a gynecologist, was tendered as an expert witness. He had examined Sharon White, D.M.'s mother, in September of 1984 and treated her for trichomonas. He says the disease fits in the category of venereal disease. In his experience he has never seen the disease transmitted in a non-sexually active person. He, too, said the disease can be transmitted through infected clothing, but not usually. He prescribed antibiotics for Sharon and her husband. He did not examine the husband, but sexual consorts automatically receive the treatment, too. Sharon told Dr. Pryor that her only sexual contact was with her husband. He had treated Sharon *499 for the same disease in 1976, shortly after D.M. was born.
Harold White testified in his own defense. He said that on November 7 he got up and left for work in Memphis at 4:30 a.m. When he came home his family was gone  he did not know where or why. His jewelry, his wife's jewelry, and his children's and wife's clothing were gone. He found out two weeks later from the school in Tupelo that the children were enrolled in Biloxi. He went to Mobile, Alabama, to help his uncle transport a furnace from Biloxi. While in Biloxi Sharon saw him and called his uncle's home and told White to meet her at the Holiday Inn in Biloxi to talk. He kept the appointment, but was met by the sheriff instead of Sharon. The sheriff served the protective order on him which prohibited him from entering Harrison County. From that time on he stayed out. He denied that anything happened between him and D.M. on the morning of October 30, stating that he had left home at 4:30 a.m. to go to Memphis in order to join a local carpenters' union there. He said he returned home from Memphis about 1:00 o'clock that afternoon and cut firewood the rest of the day. He also stated that in September of 1984 he took the antibiotics that Sharon's doctor had prescribed for trichomonas.
Jerry Smith, half-brother of Harold White, lives on the same road as the Whites. He testified that on the evening of October 29, 1984, he asked Harold to come by his house the next morning on his way to work and blow his horn in order to awaken Smith. He testified that on the morning of October 30 about 4:30 a.m., Harold in fact came by and blew his horn in order to wake him up and then headed out to the main road on his way out of town. This testimony was corroborated by his wife, Angela Smith, who said she actually saw Harold White at 4:30 a.m. on October 30 when he came by to wake up her husband. She also testified that she saw all three children walking to catch the school bus about 7:10 that morning and also saw Sharon go by between 6:30 and 7:00 on her way to work.
Mrs. Thelma Bishop, White's mother, testified that she also saw her son drive by her house between 4:30 and 5:00 a.m. on the morning of October 30 when she was getting ready to go to work.
Also in his defense, Mr. White offered the testimony of T.A. Jackson, secretary of Local 345 Carpenters Union of Memphis. Mr. Jackson testified that White came into the Memphis office on October 30 to pay his dues to that local (R. 254). His daybook shows that Harold White paid second that day before the mail came in, which comes in between 9:00 and 11:00 a.m. The first person who paid came in at 8:00 a.m. because he always pays at that time. After that entry, no time indication is listed except for the indications for the mail-ins as opposed to the walk-ins. He also testified it takes approximately two and one-half hours to drive from Memphis to Tupelo, which he timed on his way to testify. He also stated that he did not remember Harold White specifically except for the entry in his book.
Dr. Talmadge Palmer testified that he examined Harold White for VD on November 26, 1984. He said there were no signs of the disease; however, there was no way to tell if White had previously had the disease and been cured.

DISCUSSION

I. The Trial Court Erred in Refusing to Grant Appellant's Motion In Limine to Prevent the Introduction of Testimony Regarding Other Alleged Incidents of Sexual Activity Between Appellant and Alleged Victim.
During the trial D.M. was permitted to testify that Harold White forced her to have sex with him two to three times a week for a period of six months, between May and October of 1984. White made a motion in limine to prevent such testimony, which was overruled. White contends that such testimony was immaterial to the disposition of the case, was highly prejudicial, and tended to show that he was guilty of crimes other than the one in issue.
*500 Hicks v. State, 441 So.2d 1359 (Miss. 1983), synthesizes this Court's previous holdings on this issue in Otis v. State, 418 So.2d 65 (Miss. 1982), Speagle v. State, 390 So.2d 990 (Miss. 1980), Davis v. State, 367 So.2d 445 (Miss. 1979), and Brooks v. State, 242 So.2d 865 (Miss. 1971), and held that those cases control the posture of this particular issue. In all of those cases, this Court held that such evidence is admissible in this limited situation to show appellant's lustful, lascivious disposition toward his particular victim, especially where, as here, the victim was under the age of consent. Most recently, this Court has again held that it was not error to permit testimony of previous sexual offenses between appellant and his victim. Woodruff v. State, 518 So.2d 669 (Miss. 1988). There is nothing in this case to distinguish it from any of these previous cases. Therefore, this assignment of error is without merit.

II. The Trial Court Erred in Refusing to Grant Appellant's Request for Declaral of a Mistrial Upon the Prejudicial Remarks of the Prosecuting Attorney.
On redirect examination Sharon White stated that she had hocked her husband's guns in order to obtain money to get back to the Coast and to get her daughter's prescription filled. The prosecuting attorney then asked, "prescription to treat a disease that this man [appellant] gave her?" White objected to the question and requested a mistrial. The trial judge sustained the objection, admonished the jury to disregard it, and denied the motion for mistrial.
White contends that the remark was so prejudicial that it denied him a fair trial and the judge committed reversible error by denying the mistrial. He cites Acevedo v. State, 467 So.2d 220, 226 (Miss. 1985), and Keyes v. State, 312 So.2d 7, 10 (Miss. 1975), as support for his proposition that the prosecutor's remark amounted to reversible error. In Keyes this Court admonished prosecutors to refrain from making extreme statements; however, the case was reversed on other grounds. Keyes at 10. In Acevedo the prosecutor continually ignored the trial court's repeated admonitions to discontinue a forbidden line of questioning, requiring reversal of the case for prosecutorial misconduct. Acevedo at 226. The facts in this case come nowhere near that in Acevedo. The prosecutor here made one extreme statement. He was admonished to discontinue this line of questioning and he never repeated it again.
Also, it is clearly the law in Mississippi that juries are presumed to heed the trial judge's directive to disregard a question or statement or even an entire testimony. Cabello v. State, 490 So.2d 852, 857 (Miss. 1986); Johnson v. State, 475 So.2d 1136, 1142 (Miss. 1985); Stringer v. State, 477 So.2d 1335, 1338 (Miss. 1985); Sand v. State, 467 So.2d 907, 911 (Miss. 1985). This principle, taken with all the other evidence as to whether or not D.M. contracted trichomonas from her father, renders this assignment of error without merit.

III. The Trial Court Erred in Refusing to Allow the Introduction of Testimony Regarding the Previous Sexual Activity of the Alleged Victim's Mother.
At trial White wished to introduce evidence of Sharon White's previous sexual activity in order to show that D.M.'s trichomonas could have been contracted via her mother through infected towels or clothing. The trial judge granted the state's motion in limine to keep out such evidence on grounds of irrelevancy to the issue at trial, which was whether or not White had engaged in unlawful sexual activity with his 11-year-old daughter. The significance about D.M.'s trichomonas was that it explained the circumstances which prompted Sharon to confront her daughter about the stains in her underwear, and further prompted her to ask D.M. if she had been sexually active. The testimony about the trichomonas was not offered as proof of White's guilt. In fact, there was no evidence that White himself had the disease.
The evidence showed that Sharon had been previously treated for trichomonas and that the treatment assumed that her sexual partner was infected. Sharon testified that her only sexual partner since she was 14 was White. She was open to cross *501 examination on this issue. Cf. Horne v. State, 487 So.2d 213, 216 (Miss. 1986); Myers v. State, 296 So.2d 695, 700 (Miss. 1974). Furthermore, White made no proffer of what evidence he would have put on as to Sharon's sex life. Tigner v. State, 478 So.2d 293, 296 (Miss. 1985); Baugh v. State, 388 So.2d 141, 142 (Miss. 1980). White was also successful in getting into evidence, via two expert witnesses, that trichomonas could be transmitted through infected towels and infected clothing, although such cases are extremely rare. In light of the discretion the trial judge has as to the admissibility of evidence on grounds of relevancy, Shearer v. State, 423 So.2d 824, 826 (Miss. 1982), the trial judge did not commit reversible error in keeping out evidence of Sharon's sexual activity.

CONCLUSION
Finding no reversible error, the conviction of the trial court is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.