# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-KA-00600-SCT

*JONATHAN HARRELSON*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 04/02/2024 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| TRIAL COURT ATTORNEYS: | KRISTEN E. MARTIN |
| | KATHERINE BISNETTE SUMRALL |
| | AUDRY REGNAL BLACKLEDGE |
| | THOMAS LEWIS TULLOS, II |
| | BRAD RODRICK THOMPSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ASHLEY L. SULSER |
| | KATY T. SARVER |
| DISTRICT ATTORNEY: | ANTHONY J. BUCKLEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/31/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE COLEMAN, P.J., CHAMBERLIN AND BRANNING, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1. Jonathan Harrelson was convicted of statutory rape and sentenced to forty years in the custody of the Mississippi Department of Corrections. He now brings this appeal, arguing that prosecutorial misconduct deprived him of a fair trial and that the verdict was against the weight of the evidence. We affirm Harrelson's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.    On the evening of September 9, 2022, Kendall messaged her friend Valerie and asked if she would pick her up in front of the Antioch Baptist Church.[1] Kendall had just turned thirteen about a month before. She did not have permission from her father to leave the house and meet up with friends, so she snuck out through the window in her bedroom and walked the short distance to the Antioch Baptist Church. Shortly after Kendall arrived at the church, Valerie arrived in a car driven by Harrelson. Two other minors, Benjamin and Brandon,[2] were in the car as well. Prior to picking Kendall up, Valerie had been at the home of Shawn James and Keri Smith. Benjamin was Shawn's son, and Valerie was dating him at the time. Brandon was Keri's son. Valerie was twelve years old and both boys were no older than fifteen. Harrelson was forty-four.

### I.    Harrelson's Testimony

¶3.    According to Harrelson, he had been over at Shawn and Keri's home about two weeks before the alleged events when he first met Kendall and Valerie. He described the girls as "throwed away." He testified that by "throwed away" he meant the girls had rough home lives, stating that Kendall told him that her mother was in jail on drug charges and that her father beat her. Harrelson said he felt concerned for the girls' situations at home. According to Harrelson, Kendall and Valerie told him that they were "seventeen, eighteen at the time." Harrelson claimed he had no knowledge that Kendall and Valerie were, in fact, twelve and

---

[1]The names Kendall and Valerie are fictitious, used to protect the identity of the minors involved in this case.

[2]Fictitious names are used to protect the identity of the minors.

thirteen, based on the company they kept.

¶4.     On the evening of September 9, 2022, Harrelson was at Shawn and Keri's home. Harrelson offered to take Valerie and some of the other kids to the store. After going to the store, Valerie asked Harrelson to pick up Kendall at the church. Harrelson picked Kendall up at the church and began to drive back to Shawn and Keri's home. Valerie and Kendall asked Harrelson if he would drop them off at a house not far from Shawn and Keri's, so Harrelson left the girls at a home a little further down the road and proceeded back to Shawn and Keri's. When Harrelson arrived back at Shawn and Keri's home, they discussed plans to take a trip to the Gulf Coast. According to Harrelson, the plan for the trip included Shawn, Keri, their children, Harrelson, Valerie and Kendall. Harrelson then left the home of Shawn and Keri and began to drive to the Bok Homa Casino.

¶5.     As Harrelson drove to the casino, he received a call from Valerie, asking him to pick her and Kendall up so that they could ride with him on the trip down to the Gulf Coast because Shawn did not have any more room in his truck. Harrelson picked the girls up. Because the girls were not twenty-one, Harrelson knew he could not take them to the casino. They told Harrelson they were tired and did not want to go home, so he agreed to get a room for the girls at the Magnolia Motel off of Highway 11 between Laurel and Sandersville while he went to the casino. Instead of leaving Valerie and Kendall to go to the casino, Harrelson sat on the bed in the room to talk to them and fell asleep. When he woke up a few hours later, he "was sleeping on top of the blankets [fully clothed] . . . with one cowboy boot off and one foot on the bed[.]" Kendall slept in the middle of bed between Harrelson and Valerie.

3

Harrelson denied any kind of drug use at the hotel, stating that his job required regular drug screens. He also denied any sexual contact with Kendall or Valerie.

¶6. After sleeping for a few hours, Harrelson, Kendall and Valerie drove to Hattiesburg. They ate and shopped. Harrelson contacted Shawn, who told Harrelson to go ahead and drive down to the coast and get a room and wristbands so that they could go to the lazy river. Harrelson, Kendall and Valerie then proceeded to drive to the coast. Harrelson purchased a room at the Oasis Resort in Gulfport. Harrelson also purchased wristbands for Kendall and Valerie so they could go to the water park. He testified that he also purchased wristbands for everyone else who was coming on the trip.

¶7. Harrelson, Kendall and Valerie went up to the room at the Oasis. Harrelson gave the girls some money and then he went to sleep while they shopped. At some point, Shawn let Harrelson know that his car had broken down and they were no longer coming to meet them. After sleeping a little longer, Harrelson met Kendall and Valerie back at his truck. The girls then showed Harrelson a NCIC report, identifying them as minors who had run away. Harrelson was very upset to learn that Kendall and Valerie were twelve- and thirteen-year-old runaways. He immediately "contacted somebody's mother" and told them that he was bringing the girls home. He and Valerie's mother agreed to meet at the Red Apple, a convenience store in Stringer.

¶8. Harrelson stated that before he dropped the girls off at the Red Apple, they stopped at his house, and he put his clothes into the washing machine while Kendall and Valerie "sat in the living room." Then, Harrelson drove the girls to the Red Apple, dropped them off and

4

drove away.

## II. Kendall and Valerie's Testimony

¶9.    Kendall and Valerie had met through mutual friends at the local skating rink. Valerie was dating Benjamin at the time, so she and Kendall would sometimes spend time at Benjamin's home.[3] Valerie and Kendall met Harrelson at Benjamin's home a week before the incident. Since meeting Harrelson, Valerie had exchanged several texts and Snapchat messages with him. The evening of September 9, 2022, Valerie told her mother that she was going to spend the night with Kendall. Instead, Valerie went to Benjamin's house and arranged to pick up Kendall. Kendall was planning to run away from home. According to Kendall, after Harrelson picked her up in front of the church, he took them to Benjamin's grandfather's house, where Kendall and Valerie hid under a big truck until Harrelson came back to pick them up. Kendall stated that they thought their families were looking for them and that they hid under the truck so they would not get into any trouble. Kendall testified that Harrelson picked them up after thirty minutes and took them back to Benjamin's house. Valerie testified that after they picked up Kendall, Harrelson took them straight back to Benjamin's house.

¶10.    They all stayed at Benjamin's house for a little while and then Kendall and Valerie decided that they needed to leave. According to Valerie, Harrelson was going to take the girls to the gas station to buy some snacks. Valerie testified that they did not go to the gas station as planned. Kendall testified that they did go to the gas station and then decided to go to the

---

[3]Benjamin was Shawn's son. Shawn, Keri, Benjamin and Brandon all lived together in one home.

Magnolia Motel "[t]o hide out from the police and from [the girls'] parents[.]" Harrelson purchased a room while the girls sat in the car. The room he purchased had only one bed and a few chairs. When they entered the room, Valerie sat on the bed while Harrelson and Kendall sat in the chairs. Then, Harrelson pulled out a pipe. The girls thought the pipe contained marijuana, and Kendall took several hits from the pipe.[4]

¶11.   Kendall stated that after she had smoked the pipe, Harrelson exposed his penis in the motel room. Kendall stated that "me and [Valerie] was looking at each other weird. And then he put his private part back up." After this, Valerie stated that she was tired and she did not want to sleep in the middle of the bed because she felt uncomfortable. Kendall agreed to sleep in the middle of the bed between Valerie and Harrelson. They all got into the bed, and Valerie fell asleep. Kendall testified that Harrelson pulled on her shirt and pulled her closer to him in the bed. Kendall stated that he covered her mouth, pulled down her pants and penetrated her with his penis. Kendall tried to wake Valerie. She testified that Harrelson "went to go touch [Valerie], and then [Valerie] kind of jumped and turned around." Harrelson stopped when Valerie woke up and asked Kendall "to go to the car and finish things with him[.]" Valerie told a slightly different story. She testified that Kendall and Harrelson were standing next to the bed when Kendall woke her up and that they were about to go out to Harrelson's truck. Once Valerie was awake, she and Kendall went to the bathroom in the motel room together. Kendall then told Valerie that she and Harrelson had sex.

---

[4]After Kendall was picked up at the Red Apple, a drug screen showed that she tested positive for methamphetamine.

¶12.    When the girls came out of the bathroom, they all agreed to drive to the Gulf Coast. They stopped in Hattiesburg, and Harrelson gave the girls money to buy clothes and to eat. After they finished shopping, they drove to the Hard Rock Hotel, but there were no available rooms. Harrelson then drove to the Oasis and purchased a room and wristbands for the water park. Harrelson, Kendall and Valerie went to the room in the Oasis, and Harrelson went to sleep while the girls took turns showering. Kendall testified that she read a note that Harrelson had written on his phone while Valerie was in the shower. Kendall stated that the note

> was of him saying that he wanted to feel himself inside of me again. And I –
> after I read that first line, I walked away because I didn't want to read that no
> more because I was really uncomfortable. And then like I told you, I asked
> Valerie to stay [in the bathroom with me while I showered so Harrelson would
> not come in there.]

¶13.    After Kendall and Valerie showered, they went downstairs to the water park. They noticed people staring, "[l]ike they recognized us." They began to get nervous about the police coming to get them and getting into trouble for running away. Instead of staying the night at the Oasis, Harrelson, Kendall and Valerie got back into Harrelson's truck and drove to Harrelson's home. Harrelson told Kendall and Valerie to hide under his bed because "he said the cops were on us." Valerie contacted her mother, Brandi, and told her that she and Kendall would be at the Red Apple so that Brandi could pick them up. Harrelson drove the girls to the Red Apple and left. This was around two or three o'clock in the morning. Brandi's car broke down, so she called the sheriff's department, and they picked Valerie and Kendall up at the Red Apple.

7

¶14. The deputies brought Kendall and Valerie to the police department where they were interviewed by Investigator JD Carter. The interviews were recorded and played for the jury. During the interviews, Kendall and Valerie told Investigator Carter that Harrelson had sex with Kendall in the motel room. Kendall was sent to the hospital following the interview to conduct a sexual assault kit. The sexual assault kit did not reveal any physical evidence indicating any form of sexual intercourse. She did test positive for methamphetamine.

¶15. As a result of the interviews, Harrelson was charged with statutory rape. On November 2, 2023, a grand jury returned an indictment against Harrelson for statutory rape. A jury trial took place on March 27, 28 and April 1, 2024. The jury deliberated and found Harrelson guilty of statutory rape. Harrelson was sentenced to serve forty years and was required to register as a sex offender. Harrelson submitted a motion for a new trial, which was denied. Harrelson now brings this appeal.

### ISSUES PRESENTED

¶16. Harrelson raises the following issues on appeal:

    I.      Whether prosecutorial misconduct resulted in an unfair trial.

    II.    Whether the verdict was against the weight of the evidence.

### DISCUSSION

### I.    Prosecutorial Misconduct

¶17. Harrelson argues that several comments made by the prosecutor resulted in an unfair trial requiring reversal and a new trial. Twice during cross-examination and once during closing argument, the prosecutor commented that Shawn and Keri did not testify at trial and

corroborate Harrelson's story about a planned trip to the Gulf Coast. "Where prosecutorial misconduct endangers the fairness of a trial and the impartial administration of justice, reversal must follow." *Goodin v. State*, 787 So. 2d 639, 645 (Miss. 2001) (citing *Acevedo v. State*, 467 So. 2d 220, 226 (Miss. 1985)). "[T]he failure of either party to examine a witness equally accessible to both is not a proper subject for comment before a jury by either of the parties." *Brown v. State*, 200 Miss. 881, 27 So. 2d 838, 840 (1946) (citing *Heafner v. State*, 196 Miss. 430, 17 So. 2d 806, 808 (1944)). Harrelson failed to object at trial to any of the statements by the prosecutor referencing the absence of Shawn and Keri. Therefore, Harrelson asks this Court to review the issue for plain error. "To determine if plain error has occurred, we must determine 'if the trial court has deviated from a legal rule, whether that error is plain, clear or obvious, and whether the error has prejudiced the outcome of the trial.'" *Neal v. State*, 15 So. 3d 388, 403 (Miss. 2009) (internal quotation marks omitted) (quoting *McGee v. State*, 953 So. 2d 211, 215 (Miss. 2007)).

¶18.    Generally,  "[b]ecause of the high potential for prejudice to the accused," the rule prohibiting a party from commenting on the absence of an equally accessible witness has been strictly enforced in criminal cases. *Randall v. State*, 806 So. 2d 185, 210 (Miss. 2001) (internal quotation mark omitted) (quoting *Griffin v. State*, 533 So. 2d 444, 449 (Miss. 1988), *overruled on other grounds by Hye v. State*, 162 So. 3d 750, 764 (Miss. 2015)). Harrelson faces two obstacles to the enforcement of this rule: 1) no objection was made at trial, and 2) because of this, the trial judge never had the chance to evaluate whether Shawn and Keri were equally accessible to both parties. Without an objection and resulting

evaluation by the trial judge, this Court cannot satisfactorily determine that there was a violation. Furthermore, "where there is substantial evidence supporting a defendant's guilt, a prosecutor's comment about a potential witness's absence is not reversible error in and of itself." *Foley v. State*, 914 So. 2d 677, 689 (Miss. 2005) (internal quotation marks omitted) (quoting *Burke v. State*, 576 So. 2d 1239, 1241 (Miss. 1991)). "Such comments should only be considered reversible error if the evidence in the case is close or is part of a number of compounded errors meriting reversal." *Id.* (citing *Burke*, 576 So. 2d at 1241).

¶19.    The State was able to present substantial evidence of Harrelson's guilt, and he did not suffer prejudice from the prosecutor's comments meriting reversal. The State presented evidence of text messages and Snapchats between Harrelson and Valerie. The messages from Harrelson repeatedly asked Valerie if she would do him a favor. He asked Valerie if she was dating Benjamin because he "just didn't want to ask any questions if that was the case." He also asked Valerie if she could "keep silent[.]" To further summarize, the State presented photographs of Harrelson checking into and out of the Magnolia Motel on September 9, 2022; the testimony of Kendall alleging that Harrelson had sex with Kendall in the motel room; the testimony of Valerie that Kendall told her that Harrelson had sex with Kendall in the motel room; the wristbands that he purchased for Kendall and Valerie for the water park; the hotel bill from the Oasis; numerous Snapchat photos of Harrelson, Kendall and Valerie in Harrelson's truck; and Harrelson's own testimony that after learning the girls were underage, he took them to his house and washed his clothes before taking them to the Red Apple where he left them in the middle of the night. Given the substantial evidence presented

10

by the State, this Court cannot conclude that Harrelson's trial was prejudiced.

¶20.    Alternatively, Harrelson makes an ineffective assistance of counsel claim for failure to object to the prosecutor's comments about the absence of Shawn and Keri. Normally, this Court preserves ineffective assistance of counsel claims for post-conviction proceedings. *Dartez v. State*, 177 So. 3d 420, 423 (Miss. 2015) (citing *Read v. State*, 430 So. 2d 832, 837 (Miss. 1983)).

> This Court will address such claims on direct appeal when "[1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc.[,] are not needed."

*Ross v. State*, 288 So. 3d 317, 324 (Miss. 2020) (alteration in original) (quoting *Bell v. State*, 202 So. 3d 1239, 1242 (Miss. 2016)). "This Court has also resolved ineffective-assistance-of-counsel claims on direct appeal when the record affirmatively shows that the claims are without merit." *Id.* (citing *Swinney v. State*, 241 So. 3d 599, 613 (Miss. 2018); *Ashford v. State*, 233 So. 3d 765, 779-81 (Miss. 2017); M.R.A.P. 22).

¶21.    Harrelson does stipulate that the record is sufficient for the Court to review this claim. We agree and find that the record is sufficient and "affirmatively shows that the claim [is] without merit." *Id.* In order to succeed on an ineffective assistance of counsel claim, Harrelson must show that "(1) his counsel's performance was deficient, and (2) this deficiency prejudiced his defense." *Id.* (internal quotation marks omitted) (quoting *Ashford*, 233 So. 3d at 779). As stated above, Harrelson was not unduly prejudiced by the prosecutor's comments given the substantial evidence of guilt that the State presented. Therefore, the

failure of Harrelson's counsel to object to the prosecutor's comments did not rise to the level of constitutionally ineffective assistance of counsel. *Id.* Harrelson's ineffective assistance of counsel claim lacks merit.

## II. Weight of the Evidence

¶22. Harrelson asserts that the verdict was against the weight of the evidence because the testimony of Kendall and Valerie was inconsistent, they never expressed any fear or distress, they never attempted to contact the police or their families for help and no physical evidence of sexual assault was adduced. "When weight of the evidence is raised on appeal, this Court 'must not disturb the jury's verdict unless [it] is "convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice."'" *Gunn v. State*, 374 So. 3d 1206, 1212 (Miss. 2023) (alteration in original) (quoting *Newell v. State*, 175 So. 3d 1260, 1268 (Miss. 2015)). The Court "view[s] the evidence in the light most favorable to the verdict." *Id.* (internal quotation mark omitted) (quoting *Burden v. State*, 347 So. 3d 174, 178 (Miss. 2022)).

¶23. When viewing the evidence in the light most favorable to the verdict, allowing the verdict to stand would not sanction an unconscionable injustice. Harrelson testified on his own behalf and told the jury that he never engaged in any sexual contact with either Kendall or Valerie, that he believed they were seventeen or eighteen and that he and Shawn had planned a trip to the Coast. Conversely, the State presented substantial evidence that Harrelson did have sex with Kendall in the motel room, including Kendall's testimony as detailed in the prior section.

¶24.    "[T]his Court has held that 'the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence.'" *Massey v. State*, 992 So. 2d 1161, 1164 (Miss. 2008) (quoting *Miley v. State*, 935 So. 2d 998, 1001 (Miss. 2006)). Harrelson argues that Kendall's testimony was discredited by its inconsistency with Valerie's testimony and Harrelson's own testimony that he never had sex with Kendall. We note the plethora of evidence that supported Kendall's testimony: the photographs from the Magnolia motel, the Snapchats documenting the trip to the Coast, the wristbands, the hotel bill and Valerie's testimony about what occurred in the motel room. Only Harrelson's own testimony contradicted Kendall's, and that is an issue of credibility for the jury. *Price v. State*, 898 So. 2d 641, 651-52 (Miss. 2005).

## CONCLUSION

¶25.    After review, we affirm Harrelson's conviction and sentence. Though the prosecutor's comments were improper, Harrelson was not prejudiced given the substantial evidence of guilt. Furthermore, the weight of the evidence supported the verdict.

¶26.    **AFFIRMED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., MAXWELL, ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**