ARCHER *v.* STATE.*

(Division A.   Oct. 26, 1925.)

[105 So. 747.   No. 24481.]

1. CRIMINAL LAW. *Failure of either state or accused to examine witness equally accessible to both held not proper subject of comment before jury; if counsel for one party comments on failure of other to introduce witness, counsel for other party may reply and ·indulge in proper comment.*

The failure of either party to examine a witness equally accessible to both is not a proper subject of comment before the jury by either of the parties, but when counsel for one party comments on the failure of the other to introduce such a witness, counsel for the other party may reply thereto and indulge in proper comment thereon.

2. CRIMINAL LAW. *Trial court, after granting special bill of exceptions to rulings, may thereafter and before expiration of term amend or revoke it.*

A trial court, after granting a special bill of exceptions to rulings made during the course of a trial, may thereafter and before the expiration of the term amend or revoke it.

3. CRIMINAL LAW. *When jury renders verdict, poll thereof should be granted if requested by either state or accused; if, after verdict is received in presence of all jurors, it becomes impossible for jury to be polled, court does not lose power to record and render judgment on verdict.*

When a jury renders its verdict a poll thereof should be granted if requested by either party, but the polling of a jury is not a matter which affects the jurisdiction of the court, consequently if after a verdict has been received in the presence of all the jurors it becomes impossible for the jury to be polled, the court does not thereby lose the power to record and render judgment on the verdict.

---

*Headnotes 1. Criminal Law, 16 C. J., Sections 2250, 2261; 2. Criminal Law, 17 C. J., Section 3450 (Anno); 3. Criminal Law, 16 C. J., Section 2576.

APPEAL from circuit court of Pearl River county.
HON. J. Q. LANGSTON, Judge.
Clarence Archer was convicted of murder, and he appeals. Affirmed.

*W. A. Shipman* and *John C. Street,* for appellant.

I. *The court below erred in giving an improper instruction for the state which assumed as a proved and established fact a matter of most serious moment, and upon which defendant's defense was entirely based; that is, that there was no overt act on the part of the deceased.*

The instruction is doubtless a correct statement of an abstract legal proposition. The vice of it is that it assumes as an undisputed fact that the defendant is estopped to plead self-defense, because there was no overt act by the deceased. There is no qualification of this bare statement, which assumes there was no overt act on the part of the deceased, such as, "If the jury believe from the evidence that the deceased was guilty of no overt act." Such an instruction, with the testimony in such sharp conflict, regarding an overt act by the deceased, was most inapplicable and prejudicial. It tells the jury that the shooting of the deceased by the appellant cannot be justified on the ground of self-defense, because any fear or apprehension of being done great bodily harm, etc., if such he had, was unwarranted; must have been fanciful and imaginary, because not engendered by an overt act on the part of the deceased. *Holly* v. *State,* 55 Miss. 424; *I. C. R. R. Co.* v. *Cole,* 113 Miss. 896, 74 So. 766; *Meridian L. V. Co.* v. *Godfrey,* 101 Miss. 565; *Jackson L. & T. Co.* v. *Taylor,* 112 Miss. 60 Miss., 72 So. 856.

II. *The court below erred in rendering judgment on the verdict returned by the jury in said cause, because of certain remarks of the district attorney to the jury in the closing argument for the state, at a time when the defendant's counsel had no opportunity to make reply thereto.* It was highly improper, unfair and prejudicial to the defendant for the district attorney to comment unfavorably upon the failure to introduce a witness, who had been at all times identified with the prosecution; who had twice already testified for the state; whom the record shows conclusively to have been hostile to the appellant; with whom counsel for the prosecution had talked and conferred; brought into court under subpoena; who had been produced and sworn as a witness for the state, placed under the rule along with all the other witnesses for the state, and whose testimony counsel for the state deliberately withheld by refusing to call him to the witness stand and

examine him, notwithstanding he was, and must have been friendly to the prosecution and to have been the only witness for the state, save Mrs. Wheat, who claimed to have been present and who saw and heard all that occured at the time of the homicide.

No inference prejudicial to the defendant should be drawn from such refusal of the appellant to base his defense, in any degree, upon the testimony of this witness, discarded by the state. It is perfectly manifest that argument of this kind, by the representative of the state, was calculated to, and no doubt did, influence and mislead the jury against the defendant; and especially is this true, when made in the closing argument, and at a time when counsel for the defendant was without opportunity of making reply thereto. *Brown* v. *State,* 54 So. 305; *Crawford* v. *State,* 112 Ala. 661, 21 So. 64; *State* v. *Cousins,* 58 Iowa, 250, 12 N. W. 281; *State* v. *Rosier,* 55 Iowa 517, 8 N. W. 345; *Brock* v. *State,* 123 Ala. 24, 26 So. 329; *State* v. *Fitzgerald,* 68 Vt. 125, 34 At. 429; *People* v. *Quinby,* 6 Calif. App. 482 at 491, 92 Pac. 493; *People* v. *Fowler,* 104 Mich. 449, 62 N. W. 572; *Gurley* v. *State,* 101 Miss. 190, 57 So. 565. In *Harwell* v. *State,* 93 So. 366, this court, by Judge Etheridge, condemns improper remarks by the district attorney, and while this was a case in which the improper remarks were again directed to the failure of the defendant to testify, yet, the condemnation of the court goes beyond the specific complaint and condemns such improper remarks by prosecuting attorneys. *Martin* v. *State,* 63 Miss. 505; 3rd Syllabus, *Darby* v. *State,* 84 So. 6.

III. *The court below erred in attempting to withdraw its approval and allowance of special bill of exceptions No. 2.* It will be noted that this special bill of exceptions was allowed and signed by the trial judge and filed on May 3, 1924; that three days later, that is to say on May 6, 1924, the judge attempted to withdraw or refuse said bill of exceptions. This action on the part of the trial judge was taken upon his own motion, no application therefor being

presented by the district attorney, or other representative of the state. The general rule is that a bill of exceptions, when signed and delivered by the trial judge, becomes a part of the record and is not thereafter subject to change, alteration or modification, either by the court which grants it or the appellate court. That this court is in accord with the foregoing rule is shown by the decision rendered in *Bridges* v. *Kuykendall,* 58 Miss. 827. See also *Kelly* v. *State,* 113 Miss. 850, 74 So. 679 and *Dreyfus* v. *Cage,* 62 Miss. 605.

IV. After the jury had returned into court with the verdict, and after the clerk had received and read the same, instantly, one of the jurors fell to the floor of the courtroom as one dead, and so remained and continued for a space of from five to ten minutes, seemingly without life, and certainly unconscious of everything, during which time he was attended by one or two physicians, that during a part of this time many spectators rushed forward and crowded around the unconscious juror, and mingled with the other jurors before the bench of the court; that after the said juror was taken up from the floor, and while unable to stand erect, and while he may have remained in a semi-unconscious condition, the court proceeded to take a poll of the jury, including the said stricken juror.

It may be contended by counsel for the state that the polling of the jury is not necessary to complete the rendition of the verdict, but it is a right given the defendant under the law, and when he elects to exercise this right, most certainly he is entitled to the individual response of each of the twelve; and if it reasonably appears that one of the jurors, by reason of mental incapacity at the time, is unable to give an intelligent response, then the defendant is not accorded the right which the law gives him.

*F. S. Harmon,* special assistant attorney-general, for the state.

I. *The trial judge did not err in granting the instruction for the state.* Learned counsel insists that the trial court

erred in granting the instructions for the state found on page 315. This court will find, however, that counsel admits that this instruction is a correct statement of an abstract proposition. Counsel declared that the granting of it constitutes reversible error because cf its abstract nature, in that it is based on the hypothesis that there was no overt act here justifying the defendant. The court will find from a reading of the instruction that such a deduction is unwarranted. Furthermore, Instructions No. 10-20 cover the same identical point most elaborately for the defense.

II. *There is no reversible error in the language used by the district attorney in his closing argument, as set forth in the first bill of exceptions.* Both the witnesses for the state and for the defense admitted that Wiley Ladner, the chauffeur of the car in which the searching party made the trip to Mitchell's home, was an eyewitness to the homicide. Wiley Ladner testified for the state at the preliminary hearing before the justice of the peace. He testified for the state at the *habeas corpus* hearing before the chancellor. He appeared at this trial under subpoena as a witness for the state, was sworn along with the other witnesses for the state, and with them was placed under the rule. For reasons best known to himself the district attorney did not put Wiley on the stand. Neither did the attorneys for the defendant use him.

In arguing the case before the jury, the appellant's attorney, according to the bill of exceptions, turned to counsel for the defendant and asked if it was possible that the great state of Mississippi was attempting to suppress the testimony of Wiley Ladner, and asked the district attorney, ''where is Wiley Ladner, why hasn't he given you the benefit of his testimony?''

When the attorney for the defendant had finished his argument, and the district attorney arose to close his case, we find, according to the Special Bill of Exceptions that he repeated to the jury these questions which opposing

counsel had asked him with respect to the state's failure to put Wiley Ladner on the stand. And having repeated these questions, the district attorney then said: *"In reply I want to ask them where, oh, where is Wiley Ladner?"* and then went on to point out that Wiley Ladner was the friend of Clarence Archer; employed by him, drove him across the country, a member of the party when they made the location, an eyewitness to the killing, and a friend of Clarence Archer rather than a friend of Travis Wheat *"and in answer to their question,* I want to ask them, where, oh, where is Wiley Ladner?" It thus appears at the very outset of this discussion that every remark made by the district attorney on this score was "in reply" to questions asked by counsel for the accused.

It is, therefore, incongruous to find the appellant's attorneys now crying out for reversal of this cause because the district attorney simply answered a question which they asked him. If it was erroneous, to comment on the failure to use Wiley Ladner as a witness, then the error was committed by counsel for appellant, who cannot now complain because the attorney for the state answered a question which they asked him. The simple answer to the appellant's contention is that his attorneys opened up this entire matter and the district attorney did nothing more than he had a right to do under the circumstances, viz.: Reply to the questions asked him. Counsel has cited numerous authorities and now we point out their inapplicability on the particular facts of this case.

In *Gurley* v. *State,* 101 Miss. 190, 57 So. 565 and *Harwell* v. *State,* 93 So. 366, it was the failure of the defendant himself to testify in his own behalf that was commented on by the district attorney. Such comment is directly forbidden by section 1918, Code of 1906, and it is well settled that such comment constitutes reversible error. Similarly in *Kelly* v. *State,* 113 Miss. 850, 74 So. 679, the district attorney went out of the record and discussed the defendant as "a bad negro and I want him," although the evidence did not support such a characterization. In

*Mosley* v. *State,* 112 Miss. 854, it was the race question which was erroneously dragged into the discussion. While in *Perkins* v. *Guy,* 55 Miss. 153, counsel for one side sought to comment on facts which were not proved and the court quite properly stopped it.

Turning now to *Brown* v. *State,* 54 So. 305 (1911), we find that here the district attorney in his closing argument commented in strong language upon the failure of the appellant to introduce as witnesses his father and brother. The court held this to be reversible error. Be it noted, however, by way of a distinction that here it was the district attorney himself who had commented upon this question and attorney for accused in his argument made no reference whatever to this matter. In other words, the district attorney himself was responsible for this question being brought before the jury. Appellant's counsel also cites *Railroad Co.* v. *Weinstein,* 99 Miss. 515 (1911), a civil suit for damages, wherein the trial court refused to stop counsel for the plaintiff in commenting upon the failure of the Railroad Company to use certain witnesses and refused an instruction telling the jury to disregard this statement. Here again, there is a valid distinction. It was the plaintiff who introduced this forbidden subject, the defendant did not bring this comment upon himself, as was done in the case at bar, but the defendant sought as soon as the subject was mentioned to have counsel for plaintiff stopped in the course of his argument, but the court erroneously failed thus to stop him.

The leading case on this entire subject is *Western & Atlantic R. R. Co.* v. *Morrison,* 40 L. R. A. (Ga.) 84. Here the Railroad Company in the course of a damage suit had the fireman on the engine which did the damage in court, but did not use him as a witness, and counsel for the plaintiff commented on the failure to use the fireman. The court held that this argument was not improper and refused to declare a mistrial and the judgment of the trial court was affirmed on the ground that when the defense produced the witness in court so that he could have been

introduced and examined by the plaintiff, if they had chosen to do so, there could be no inference that the former knew anything detrimental to the company.

Surely what is sauce for the goose is also sauce for the gander, and while we do not here attempt to justify the comment of either side on the failure to use a witness, we do insist for the state that since both sides commented on it, no reversible error was committed.

III. *The appellant was tried by a jury acceptable both to him and to the state. The verdict of said jury was regular and proper and the poll of the jury made at the request of counsel for the appellant indicated that this verdict was the true and lawful verdict of each and every juror.* When the jury returned to the courtroom and delivered their verdict to the clerk and after the reading thereof by the clerk, "instantly without the passage of any appreciable time, juror S. C. Flynt then and there fell down upon the floor of the courtroom as one dead and so continued for a space of from five to ten minutes . . ."

The only purpose of the polling of the jury in open court is to ascertain whether or not the verdict of the jury as handed to the clerk is the true verdict of each and every man, and this gives any juror who was subject to undue pressure by his fellows an opportunity to state in open court whether or not the verdict rendered is his verdict. Let us see whether or not the law is satisfied. The evidence is undisputed that the verdict was in the handwriting of S. C. Flynt; and that S. C. Flynt himself brought the slip of paper containing the verdict into court and upon the direction of the trial judge handed same to the circuit clerk to be read. It is submitted that the mere fact that the verdict was in his handwriting and that his affirmative act in handing same to the clerk indicated beyond peradventure of a doubt, that the verdict rendered was his individual verdict. The written verdict had already been handed to the clerk and read by him and there is nothing whatever to indicate that any member of the

crowd did anything improper or made any improper advances to members of the jury. And in the absence of some affirmative showing that some actual impropriety occurred, nothing in the language used in the Bill of Exceptions is sufficient to justify a reversal of this cause.

IV. But this is not all. This Bill of Exceptions was marked filed on May 3, 1924, and in addition to this notation of the clerk, appears the following notation: "Refused as to Bill of Exceptions No. 2, This May 6th, 1924. J. Q. Langston, Judge." In other words, after the trial judge had signed this Bill of Exceptions, but while the term of court was still in session, and before his act had taken the form of finality, he marked the Bill of Exceptions as refused, and thus rescinded the action of May 3 when he signed the same. Counsel insists that the judge lost all control over the matter at the moment that the Bill of Exceptions was signed. A short answer to this contention is found in *Dreyfus* v. *Cage*, 62 Miss. at 606, where the court in respect to this identical matter said, "being a part of the record, it is not within the power of the judge who signed it *after the expiration of the term of court, or of this court,* to make or cause to be made any alteration in it."

The granting of Bills of Exceptions is purely a statutory process and the statute must therefore govern. We respectfully refer court and counsel to sections 579 and 580, Hemingway's Code, as covering this matter completely.

We respectfully submit that there is no error of law in this record sufficient to justify reversal of this case. There is a dispute as to the facts, but in this realm the action of the jury is of primary importance, and since the evidence for the state, if believed by the jury as it was believed, was sufficient to prove the murder of Travis Wheat and the presence of the necessary mental element in the mind of the appellant at the time he fired the fatal shot, the verdict of the jury must not be disturbed, and the judgment of the lower court should therefore be affirmed.

Argued orally by *Jno. C. Street* and *W. A. Shipman,* for appellant, and *Francis Harmon,* assistant attorney-general, for the state.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a conviction of murder followed by a sentence to life imprisonment. The appellant claims to have killed the deceased in self-defense, and the evidence relative thereto was conflicting. One of the eyewitnesses to the killing, who had accompanied the appellant to the scene thereof, was summoned by the state, appeared at the trial, was sworn with the other witnesses, but was not introduced as a witness by either the state or the appellant. In his closing argument, as appears from a special bill of exceptions taken thereto, the district attorney used the following language:

"Counsel for the defense asked me if it is possible that the great state of Mississippi is attempting to suppress the testimony of Wiley Ladner, and asks me, 'Where is Wiley Ladner? Why hasn't the state given you the benefit of his testimony?' In reply I want to ask them where, oh, where is Wiley Ladner? He was the friend of Clarence Archer; Clarence Archer employed Wiley Ladner to drive from Kiln to the home of Raymond Mitchell; when they were at Kiln, Wiley was there; as they drove across the country Wiley was there; when they went to locate the buried treasure Wiley was there; he was with them at the time of the killing; he left with them after the killing. He was the friend of Clarence Archer and not of Travis Wheat, and in answer to their question. I want to ask them where, oh, where is Wiley Ladner."

This language was objected to by counsel for the appellant, but the ruling of the court thereon does not appear. The cause will be decided, however, as if it appeared that the objection was overruled. By another special bill of exceptions it is set forth that—When the jury came "into open court, and after they, or some of the members of the

said jury had announced that they had agreed upon a verdict, and after the court had directed the clerk of the court to receive and read the said verdict, and after the reading thereof by the clerk, instantly, without the passage of any appreciable time, a certain juror, to-wit, S. O. Flynt, then and there fell down upon the floor of the courtroom as one dead, and so remained and continued for the space of from five to ten minutes, seemingly without life and certainly unconscious of everything, during which time he was attended by one or two physicians; that during a part of the time the said juror lay as one dead. Many spectators then and there in the courtroom pushed forward and crowded around the recumbent form of the said unconscious juror, and mingled themselves with the other jurors then and there before the bench of the court; that after the said juror was lifted from the floor upon which he had fallen as aforesaid, and while unable to stand erect, and while he may have still remained in a semi-unconscious condition, the court proceeded to and did, then and there, take a poll of the jury and of each and every juror, including the said S. C. Flynt, to all of which the defendant excepts.''

This special bill of exceptions was signed by the trial judge, but thereafter he entered an order on the minutes of the court, and on the bill of exceptions itself, revoking it. On the motion for a new trial it was made to appear by evidence that this juror had spells of the character set forth in the bill of exceptions on other occasions; that his father and grandfather had both been committed to an insane hospital. The juror, Flynt, seems to have recovered from his nervous condition immediately after the jury was discharged, but he disappeared some days thereafter under circumstances strongly suggesting suicide. The evidence relative thereto other than that hereinbefore referred to indicates no defect in his mental capacity for jury service.

The errors assigned are: (1) That one of the state's instructions assumes that the evidence negatives the com-

mission of an overt act on the part of the deceased; (2) that the court erred in permitting the district attorney to make the assignment hereinbefore set forth; and (3) that the appellant was deprived of his right to a poll of the jury. The first of these assignments of error is obviously without merit.

The failure of either party to examine a witness equally accessible to both is not a proper subject of comment before the jury by either of the parties, *Brown* v. *State*, 98 Miss. 786, 54 So. 305, 34 L. R. A. (N. S.) 811, but when as here counsel for one party comments on the failure of the other to introduce such a witness, counsel for the other party may reply thereto and indulge in proper comment thereon. 1 Thompson on Trial (2d Ed.) par. 987; 38 Cyc. 1501. The district attorney's statement of Wiley Ladner's association with appellant was in accord with the evidence, and his deduction therefrom that he was a friend of the appellant was legitimate. The charge indirectly but manifestly intended to be made by the district attorney that Ladner was absent with the connivance of the appellant should, of course, not have been made, for there was nothing in the evidence to warrant it. But the appellant cannot complain thereat since it was provoked by a similar unwarranted charge made by his counsel against the state.

This brings us to appellant's complaint that he was deprived of his right to a poll of the jury. Two questions are here presented: (1) Can the trial court revoke a bill of exceptions after it has been granted? and (2) Was the court below deprived of the power to receive and enter the verdict by reason of the fact that a complete poll of the jury was rendered impossible by the physical condition of one of the jurors?

Bills of exceptions of the character of the one here in question are governed by sections 795, 796, Code of 1906 (Hemingway's Code, sections 579, 580). Neither of these sections deal with the power of a trial court to revoke a bill of exceptions, but under the rule that a court during the term thereof has full control over all records made by

140 Miss.—39.

it during the term, we must hold, in the absence of a provision to the contrary in the statute, that it has the power before the expiration of a term to correct or annul a bill of exceptions granted by it at that term. Of course, after the expiration of the term a bill of exceptions, in the absence of statutory authority therefor, cannot be amended or revoked (*Dreyfus* v. *Cage,* 62 Miss. 605), but should we hold to the contrary the same result must follow. A litigant, against whom a jury verdict has been rendered, has ordinarily a right to a poll of the jury, and a request therefor should be granted, if it is possible for the court to do so. *James* v. *State,* 55 Miss. 57, 30 Am. Rep. 496. It is not a right, however, which is vital, and in the vast majority of cases when exercised results in nothing favorable to the party demanding it. Nor is the polling of the jury a matter which affects the jurisdiction of the court, consequently if after a verdict has been received in the presence of all the jurors it becomes impossible for the jury to be polled, the court does not thereby lose the power to record and render judgment on the verdict. *Humphries* v. *District of Columbia,* 174 U. S. 190, 19 S. Ct. 637, 43 L. Ed. 944.

The appellant did not request the court below to delay the poll of the jury until the juror, Flynt, should recover sufficiently to say whether the verdict returned was his. Had such a request been made a different question might have been presented, as to which we express no opinion.

*Affirmed.*