HEAFNER *v.* STATE.

(In Banc. May 8, 1944. Suggestion of Error Overruled June 5, 1944.)

[17 So. (2d) 806. No. 35638.]

**Stone & Stone,** of Coffeeville, for appellant.

Greek L. Rice, Attorney-General, by George H. Eth-ridge, Assistant Attorney-General, for appellee.

432

Gerald Chatham, of Hernando, for appellee.

Argued orally by **W. I. Stone**, for appellant, and by **Geo. H. Ethridge**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellant Aaron Heafner and Alfred Shaw were jointly indicted for the murder of Jimmy Deskin, a soldier sta-

tioned at Camp McCain. There was a severance and Heafner was tried alone and convicted and sentenced to the penitentiary for life. From that judgment he prosecutes this appeal.

The errors assigned and argued which are of sufficient merit to require discussion by the court, are: The admission of the testimony of Hyde, the ex-sheriff of the county, contradicting the witness Shaw; remarks made by the District Attorney in his closing argument; and that the evidence was insufficient to justify a conviction. The principal witness for the state was Mrs. Hunt, who resided at the hotel in Coffeeville; and the principal witnesses for appellant were himself and his co-defendant Shaw, their evidence, if true, established an alibi.

Circle Inn is located on Highway 7 about a mile south of Coffeeville, and Fred's Place is about a half mile south of that place on the same highway. Both places appear to belong in the category of what is commonly known as roadhouses—liquor, dancing, etc.

The deceased Deskin was found on the highway near Fred's Place something like 3 or 4 o'clock in the morning of June 17, 1943, suffering from injuries from which he died soon thereafter in the Camp McCain Hospital, where he had been carried. He had head injuries and his body was badly crushed and several bones broken.

Mrs. Hunt testified that she and Heafner and Shaw had been together a large part of that night; that they were dancing and carousing at both of those places until about 1 o'clock on the morning of the 17th, when they left Fred's Place in Shaw's car, taking Deskin with them; that she and Deskin were on the back seat of the car, Shaw was driving and Heafner was on his right; that they went only a short distance when Deskin began to kiss her; that thereupon Shaw stopped the car and Heafner struck Deskin over the head with an iron wrench and then turned the wrench over to Shaw and suggested that he do likewise, which he did; that thereupon Deskin fell over against her; that they then got out and pulled

Deskin out of the car and laid him on the highway and ran the automobile over his body several times; that after so doing they drove to Coffeeville and exchanged Shaw's car for Heafner's, and Shaw left them and went to his home, and she and Heafner then drove to Grenada and went to the Goody Restaurant and ate something, and returned to Coffeeville before daylight.

Shaw and Heafner both testified that they returned to Coffeeville not later than 11 o'clock that night and Shaw went home and went to bed; and Heafner corroborated Mrs. Hunt's testimony in the main in reference to the trip to Grenada and return. Both denied any part in the murder.

Mrs. Hunt testified that when Heafner returned her to the hotel that morning he "hollered" to the keeper of the hotel not to say anything about his being there at that time of night. The keeper of the hotel and his wife testified that they heard no such request. A soldier testified that he was at Fred's Place considerably after 11 o'clock that night and Heafner, Shaw and Mrs. Hunt were all there. Hyde, the sheriff, testified that the next morning in a conversation with him Shaw told him that he was present at Fred's Place when a certain altercation occurred between Deskin and Fred. Other testimony in the case was to the effect that that altercation took place after 12 o'clock that night. This evidence was admitted over appellant's objection, and that action of the court is assigned and argued as error. It is contended that it was a contradiction on an immaterial issue. There is no merit in the contention. It was very material whether or not Shaw and Heafner were at Fred's Place as late as 12 o'clock. Both of them testified they were not. Shaw's statement to the sheriff was in effect a contradiction of his alibi testimony. "Testimony embodying a substantive fact relevant to the issue, whether brought out on direct or on cross-examination, may be contradicted by proof of unsworn statements made out of court."

Williams v. State, 73 Miss. 820, 19 So. 826.

Heafner's counsel in his argument criticised the District Attorney for not putting Captain Tatum on the witness stand, to which the District Attorney objected. The District Attorney in his closing argument criticised the defendant for not putting a certain witness on the stand, to which the defendant objected. In both instances the court directed counsel to stay within the record. Defendant's counsel did not move for a mistrial. In other words, the record shows that one side was as guilty as the other of improper argument. We do not think Heafner was prejudiced thereby. "The failure of either party to examine a witness equally accessible to both is not a proper subject of comment before the jury by either of the parties, . . . but when as here counsel for one party comments on the failure of the other to introduce such a witness, counsel for the other party may rely thereto and indulge in proper comment thereon." Archer v. State, 140 Miss. 597, 105 So. 747, 748. The conviction in that case was affirmed.

The question whether the evidence was sufficient to sustain the conviction we think must be answered in the affirmative. It is true that the main witness for the state, Mrs. Hunt, was of low moral character. She was 19 years of age and had a child 5 months old, which the evidence tended to show was a bastard although she claimed to have a husband. However, the character of Heafner and Shaw was no better, they both had wives. In addition, Heafner had a son in the army 19 years of age. According to their own admission on the witness stand they spent that night carousing. Their guilt was a question for the jury to decide and not this court. They saw the witnesses and heard them testify and noticed their deportment and manner while testifying. In many cases, and especially in a case of this character, those are very important considerations.

Affirmed.