557 So.2d 533 (1990)
Curtis Lee DOBY
v.
STATE of Mississippi.
No. 07-KA-58771.
Supreme Court of Mississippi.
February 14, 1990.
*534 William B. Sullivan, Laurel, for appellant.
Mike C. Moore, Atty. Gen. and Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Today's appellant challenges his conviction of the offense of unlawful sale of cocaine, upon which he has been sentenced to twenty years imprisonment, and presents numerous questions regarding the fairness of his trial. We have noted his points and that his trial was less than perfect. Reviewing the trial as a whole, we may say with confidence that the appellant's substantial right to a fair trial has not been impermissibly abridged. We affirm.

*535 II.
Shortly after four o'clock in the afternoon on September 16, 1985, Donna Conner, an undercover agent for the Mississippi Bureau of Narcotics, together with an unidentified black female who was a confidential informant, left Meridian, Mississippi, in Conner's automobile and drove to a residence in Stonewall, Mississippi. Conner's mission was to purchase controlled substances from Curtis Lee Doby who Conner knew then as Curtis Cotton. Sgt. Dennis Wood acted as the agent in surveillance and followed Conner to Stonewall in another vehicle. Upon arrival in Stonewall, Sgt. Wood drove to a surveillance location while Conner and the confidential informant drove to the front of a brick house located on Reveria Road. At the time Agent Conner carried a micro-cassette recorder in her purse for use in recording any conversation that might take place.
Doby was standing in his front yard talking to some other people, as Agent Conner and the informant pulled up in front of his house. Doby came over to the car and got into the back seat on the passenger side, sitting directly behind Conner. Agent Conner asked Doby to sell her some cocaine. Doby said he had one-fourth of an ounce of cocaine, colloquially, a "quarter". Doby said the price would be $700.00, but when Agent Conner insisted on "a deal" he agreed to sell it to her for $650.00. At that time Doby got out of his car and went back inside the house. Doby returned a few minutes later and handed Agent Conner a clear plastic bag containing a white powdery substance later identified as cocaine. Conner counted out $650.00 and handed it to Doby. The confidential informant was present inside the vehicle during the entire conversation and was an eyewitness to the entire transaction. Agent Conner tape-recorded the conversations between herself, Doby and the confidential informant.
On March 11, 1986, the Clarke County Grand Jury returned an indictment formally charging Doby with the sale of approximately 7.0 grams of cocaine, a Schedule II controlled substance. See Miss.Code §§ 41-29-115(A)(a)(4) and 41-29-139(a)(1) (Supp. 1989). After several continuances, the case was called for trial on September 21, 1987.
The case for the prosecution consisted of the testimony of Agent Conner, surveillance sergeant Dennis Wood, and Steven Howard, a forensic chemist at the Mississippi Crime Laboratory. Doby offered no evidence in defense, and in due course, the jury found him guilty as charged. The Circuit Court sentenced Doby to twenty (20) years imprisonment, the first sixteen (16) years of which run concurrently with a sentence under which Doby was then held.[1]
Doby now appeals to this Court.

III.
Doby charges that the evidence against him was insufficient to support the guilty verdict returned against him and, accordingly, that the Circuit Court erred when it denied his post-trial motion for judgment of acquittal notwithstanding the verdict. This motion, of course, was but a renewal of Doby's request for a peremptory instruction at the end of all of the evidence and his motion for a directed verdict of acquittal at the end of the prosecution's case.
The point is controlled by Doby I v. State, 532 So.2d 584, 590-91 (Miss. 1988). The evidence in Doby I was in one respect very similar to that in today's case. In Doby I, Doby was convicted of selling three grams of cocaine to Agent Conner, a conviction again obtained largely on the strength of the testimony of Agent Conner. In Doby I, the defendant himself took the stand in his own defense and, in addition, called four alibi witnesses who testified that on September 11, Doby was in Evanston, Illinois, visiting a friend. In this case, Doby offered no evidence in defense and, if anything, the evidence before us today considered *536 as a whole is stronger supporting the verdict of guilty than that in Doby I. See also Clemons v. State, 482 So.2d 1102, 1105-06 (Miss. 1985); Pate v. State, 419 So.2d 1324, 1326 (Miss. 1982). The assignment of error is denied.

IV.
Doby complains of the Circuit Court's refusal to order a mistrial by reason of a said-to-be prejudicial comment of a prospective juror at voir dire. What happened is this: The Court, in preliminarily qualifying the prospective jurors, asked one of the standard questions: Did anyone on the jury panel know the defendant, Curtis Lee Doby? One of the jurors, Terry W. Herring, answered in open court that he sat as a juror at Doby's first trial for the sale of cocaine.[2] Herring did not indicate the outcome of that trial, nor did he say whether the jury he sat on heard an earlier trial of the present charge which may have ended in a mistrial or whether that charge arose from a separate incident. Upon timely objection, the Circuit Court considered the matter and denied Doby's motion for mistrial on grounds that juror Herring "didn't indicate whether the defendant had been convicted or not, just simply said that he was a juror on a case where he had been tried." In fact, Herring was not reached on the jury list and did not serve on the jury. The Court said that it would have been willing to excuse Herring had he been reached but that under the circumstances, "I don't feel that there's any harm done."
There is no suggestion Doby requested that any cautionary instruction be given to the other jurors or that the Court gave any such instruction sua sponte. In fact, the Circuit Court's response to Herring's comment appears a bit casual (insofar as the record reflects). Contrast Irving v. State, 361 So.2d 1360, 1368 (Miss. 1978), wherein a prospective juror volunteered "Judge, the murdered man is my brother." The Irving court immediately excused the juror, and there followed an extensive voir dire (extending to forty-one pages in the record) to assure that no member of the jury panel had been tainted by the remark.
In the end, the Circuit Court instructed the jury to determine its verdict "from the evidence in this case." If Juror Herring's comment had inflicted substantial and legally cognizable prejudice, however, this instruction would have had little curative power, as its language was remote in time and general in form. Contrast Davis v. State, 530 So.2d 694, 697 (Miss. 1988).
On appeal, Doby invokes the principle underlying our familiar rule that at trial an accused's involvement in other crimes is irrelevant, with certain exceptions not relevant here. See Rule 404(b), Miss.R.Ev. We have reversed drug convictions where *537 witnesses suggested that the defendant had been involved in other crimes for which he was not then on trial, both before Rule 404(b), e.g., Sumrall v. State, 272 So.2d 917, 919 (Miss. 1973), and since. Darby v. State, 538 So.2d 1168, 1173-74 (Miss. 1989). The matter concerns us, for after Herring's remark there is little likelihood the jurors who heard the case may have forgotten it. Herring's comment may have had a particular potential for prejudice in that it may have suggested to the jury panel Doby had a prior involvement in a sale of cocaine, the same offense for which he was about to be put on trial.
The prosecution responds, citing Holifield v. State, 275 So.2d 851, 856-57 (Miss. 1973). In Holifield the Court held a juror's untoward comment about a man being shot and about some burglaries of "no prejudicial effect" because the juror's comment did not suggest that the accused may have been involved in other offenses. 275 So.2d at 855-56. Today's case is precisely the contrary. Juror Herring's comment did suggest that the accused may have been involved in another offense, identical to the offense for which he about to be put to trial.
We find this assignment altogether disturbing. There are clearly cases where an extemporaneous remark by a prospective juror may be of such gravity that the Court should declare a mistrial. See, e.g., Smith v. State, 198 So.2d 220, 224 (Miss. 1967). At the very least great care should be taken to assure that the remaining panel members have not been tainted. The record before us falls short of mandating reversal.
Peterson v. State, 518 So.2d 632 (Miss. 1987) is not unlike today's case. In Peterson, "during the voir dire of a juror, White, ... the State asked the juror ... do you know Birdlegs (Alexander), to which the juror responded, `I know his wife and I have come to the jail with her before,' or words to that effect, whereupon, attorney for the defendant approached the bench and requested that a mistrial be declared because of the reference made by the juror as to the jail... . ." Peterson, 518 So.2d at 638. In the peculiar state of the Peterson record, the Court said, "Based on what we have before us, we cannot say from the evidence in this record that the trial judge abused his discretion in denying Peterson's motion for a mistrial." Id. The Peterson Court, however, reversed on other grounds.
Under the circumstances, Doby's remedy was a request of the Circuit Court that the jurors disregard the comment and give it no effect in deliberating upon the evidence and their verdict. The lack of a verbatim transcript precludes our finding that the content and setting of Juror Herrring's remark were sufficiently egregious that mistrial be mandated. Compare Peterson, 518 So.2d at 638. On what is before us, we decline to hold that the Circuit Court abused its discretion when it denied Doby's motion for a mistrial.

V.
Doby further charges error in the Circuit Court's denial of his motion for a mistrial made when, during closing argument, the prosecuting attorney commented upon defendant's failure to subpoena the confidential informant.[3] This claim is based upon the following comment and colloquy at final argument:
BY MR. GRISSOM:
Now, confidential informant, we've already explained to you what a confidential informant is. It's somebody that's already underground, somebody who the *538 folks in the underworld won't expect to be a squealer or whatever your name for a confidential informant is. Why didn't the CI come up here and testify? Well, you put the CI on the stand and half of Clarke County knows who it is. Isn't it reasonable to keep your confidential informant off the stand? You've got a tape. You've got an eyewitness. You're not wanting that person to be revealed in a court of law where you're going to have all of your  all of your folks in the county know about it. The State has the power of subpoena. So does defense counsel. You didn't see anybody subpoena him, did you?

BY MR. PITTS:
If the Court please, I move the court for a mistrial. When it was brought up here before this jury like this man has some duty, an obligation to present testimony in evidence. He does not. I object to it and ask the court for a mistrial.
BY THE COURT:
Well I didn't hear exactly what you said.
BY MR. GRISSOM:
Judge, I just stated the fact that the CI was not subpoenaed by the State as well as the defense.
BY THE COURT:
Well I overrule your motion.
BY MR. PITTS:
Your Honor, he more specifically said  pointed out that this defendant could subpoena the witness as well as they could.
BY MR. GRISSOM:
Judge, Mr. Pitts 
BY THE COURT:
I overrule the motion.
BY MR. PITTS:
If the Court please, I ask for a special bill of exception.
BY THE COURT:
Yes, sir. It's granted.
The prosecution argues that, by defense counsel's cross-examination of Agent Conner during the prosecution's case-in-chief, the defense opened the door to these statements. During that cross-examination, Conner testified that she knew the identity of the female confidential informer but could not have subpoenaed the informant for trial. According to Conner, that was a function of the district attorney's office or defense counsel. This entire colloquy which the prosecution asserts invited its response during closing argument is quoted as follows:
Q. You say that you had this confidential informant with you.
A. Yes.
Q. That would be a witness to what happened here.
A. Yes.
Q. Do you have that confidential informant here to testify as to what happened?
A. I do not have the informant here.
Q. So, the only thing we've got is your testimony then?
A. I don't know who else was subpoenaed for this case other than Agent Wood and myself.
Q. You've been down here waiting around for this trial to come up. You didn't see the confidential informant around, did you?
A. No, I haven't seen the informant.
Q. You know who the confidential informant is, don't you?
A. Yes. I do.
Q. You could have that person here, couldn't you?
A. I could not subpoena the informant here.
Q. You could have the confidential informant subpoenaed, couldn't you?
A. The District Attorney's office or the defense attorney is responsible for that.
Q. If the confidential informant was here that confidential informant could verify what you say happened, couldn't she?
A. The confidential informant could do that. Yes.
Several rules are implicated here. To begin with, a long line of cases establishes the proposition that the failure of either party in a criminal prosecution to call a witness equally accessible to both is *539 not a proper subject for comment by either.[4]See, e.g., Holmes v. State, 537 So.2d 882, 885 (Miss. 1988); Griffin v. State, 533 So.2d 444, 449 (Miss. 1988); Brock v. State, 530 So.2d 146, 154-55 (Miss. 1988); Phillips v. State, 183 So.2d 908, 911 (Miss. 1966); Brown v. State, 200 Miss. 881, 887, 27 So.2d 838, 840 (1946). In cases where the prosecuting attorney has remarked that the defendant did not call a particular witness, we have often found the comment to "etch into the minds of the jurors the impression" that the missing witness would have testified adversely to the defendant, and we have held this, standing alone, grounds for reversal. See, e.g., Holmes v. State, 537 So.2d at 884-85; Madlock v. State, 440 So.2d 315, 317-18 (Miss. 1983); Morgan v. State, 388 So.2d 495, 497-98 (Miss. 1980). On other occasions we have found this error, coupled with others, cumulative grounds for holding the accused was denied a fair trial and thus grounds for reversal. Collins v. State, 408 So.2d 1376, 1379-81 (Miss. 1982); see also Griffin v. State, 533 So.2d at 449.
There is a further problem here. As in Holmes and Madlock, there is no evidence in this record regarding the accessibility or inaccessibility of the confidential informant, and, particularly, the accessibility of the informant to the defendant.[5] This brings the prosecution's argument within the proscription of another rule, that prohibiting argument respecting a point of fact not in evidence. See Knox v. State, 502 So.2d 672, 674-75 (Miss. 1987); Tubb v. State, 217 Miss. 741, 744, 64 So.2d 911, 912 (1953); Roney v. State, 153 Miss. 290, 299, 120 So. 445, 447 (1929); Archer v. State, 140 Miss. 597, 609, 105 So. 747, 748 (1925).
Notwithstanding, the prosecution argues persuasively that the complained-of comments were invited, pointing to defense cross-examination of Agent Conner regarding the informant's whereabouts. Doby "opened the door" during his cross-examination of Conner, and the prosecutor was merely trying to fight the fire kindled by the defendant with a fire of his own, or so we are told.
Jefferson v. State, 386 So.2d 200, 202 (Miss. 1980), is authority for the proposition that where opposing counsel "opens the door," the prosecution may enter and develop a matter in greater detail. 386 So.2d at 202. If a defendant opens the door to line of testimony, ordinarily he may not complain about the prosecutor's decision to accept the benevolent invitation to cross the threshold. United States v. Delk, 586 F.2d 513 (5th Cir.1978). In this sense Doby's wound may certainly be regarded as self-inflicted. See Lewis v. State, 445 So.2d 1387 (Miss. 1984); Jackson v. State, 423 So.2d 129 (Miss. 1982); Reddix v. State, 381 So.2d 999, 1009 (Miss. 1980) ["If the defendant goes fishing in the state's waters, he must take such fish as he catches."]. Heafner v. State, 196 Miss. 430, 437, 17 So.2d 806, 808 (1944) and Archer v. State, 140 Miss. 597, 609, 105 So. 747, 748 (1925) recognize these premises in today's context.
Crediting Doby's thesis would have great potential for mischief. Without implying that Doby's counsel, in his cross-examination of Agent Conner, deliberately held out *540 the bait hoping the prosecution would offend the no comment rule  and thus infect the proceedings with error, he certainly could have done so. This of itself gives pause. Moreover, a fair reading of that cross-examination does indeed find the defense suggesting that the prosecution was up to something in its failure to have the confidential informant present. We may not in fairness hold the prosecution unable to answer.
The assignment of error is denied.

VI.
Doby further charges error in the Circuit Court's overruling his objection to introduction of the cocaine as evidence against him. He complains that the prosecution failed to lay the predicate in the form of proof of the chain of custody. Doby presented an analogous point on quite similar facts on his first appeal, and we denied relief. Doby I, 532 So.2d at 588. That ruling is dispositive of today's claim.

VII.
Doby next complains of Instruction S-I-A[6] granted at the prosecution's request over his timely objection. His complaint is that the instruction combines the elements of the offense with the form of the verdict and that, by reason thereof, the instruction is prejudicial and suggestive that the jury should find Doby guilty. An identical instruction was presented in Doby I and a like complaint was made on appeal. We affirmed in Doby I, 532 So.2d at 591-92, and find that ruling dispositive but believe further comment may be in order.
For one thing, we believe it better form for the instruction regarding the substantive elements of the offense to be given separately from the form of the verdict instruction. We cannot overemphasize the importance of the jury perceiving a judicial attitude of complete neutrality toward the question of whether a defendant should be found guilty. There is a potential for compromise of that perception in the present instruction.
Second, the instruction at issue is obviously a product of drafting by counsel adhering to the familiar practice of trying to slant the language as much as possible in favor of the verdict desired. The instruction includes the beyond-a-reasonable-doubt standard but fails to instruct the jury sharply that the prosecution must meet this standard with respect to each element of the offense. We have cases too numerous to cite to the effect that the prosecution at trial bears the burden of proving beyond a reasonable doubt that the accused is guilty of each element of the offense. See, e.g., Steele v. State, 544 So.2d 802 (Miss. 1989); White v. State, 532 So.2d 1207, 1219-20 (Miss. 1988); Brock v. State, 530 So.2d 146 (Miss. 1988); McCray v. State, 486 So.2d 1247, 1251 (Miss. 1986); Barnette v. State, 481 So.2d 788, 791 (Miss. 1985).
These comments made, we perceive no grounds for reversal on this point.

VIII.
Finally, Doby charges error in the Circuit Court's overruling his objection to the prosecution's offer into evidence of the tape-recording *541 Conner made of the sale of cocaine. It will be recalled that on the afternoon of September 16, 1985, Agent Conner carried a micro-cassette recorder in her purse and recorded the relevant events of that afternoon. The Circuit Court overruled Doby's trial objection and received the tape-recording as evidence.
On appeal, Doby presents a shotgun approach. He challenges the tape on grounds it has not been properly authenticated, that it is garbled, unintelligible and thus lacking in probative value. Moreover, Doby objected to the jurors being allowed to take the tape-recording into the jury room in connection with their deliberations. Though the micro-cassette tape was received as an exhibit, it was never played in open court in the presence of the jury, at least insofar as the record reflects.
We have recently considered the legal issues surrounding the point in Middlebrook v. State, 555 So.2d 1009, 1011-1013 (Miss. 1990). In large part Middlebrook controls today's case.
Rule 901(a), Miss.R.Ev., requires that, before the recording could be offered in evidence, the prosecution must offer evidence adequate to satisfy the trier of fact that it was indeed what the prosecution claimed it to be: a recording of all the sounds and statements incident to Agent Conner's "buy" from Doby. Whether the evidence met that minimal threshold was a matter for the Circuit Court. Rule 104(a), Miss.R.Ev.
Conner testified and described the manner in which she made the recording. She stated that it covered a conversation between 4:40 and 5:08 p.m. on Monday, January 16, 1985, that three voices appeared on the tape, her own, Doby's and that of the confidential informant; and that no changes or alterations had been made to the tape. She stated that after the transaction she hot sealed it in an evidence envelope and preserved it until it was opened shortly before trial. When asked if she had recently listened to the tape, Conner answered "I've listened to part of it," and Doby seizes on this as grounds for his present appeal. While it is clearly the better practice for the prosecution, before offering such a tape in evidence, to have the offering witness listen to the entire tape, we do not regard this deficiency of such gravity to predicate error.
Beyond this, we have listened carefully to the tape recording which has been furnished as a part of the record on appeal. It is certainly true that parts of it are inaudible, although Middlebrook establishes that this fact per se does not render the recording inadmissible. What can be heard on the tape is the voice of three individuals, two female and one male. The strongest voice is that of a person making a purchase of cocaine, Agent Conner. The male voice of the seller is distinguishable, although many of the details of what he said are inaudible. To the point, the tape reflects a verbal agreement for a negotiated sale by the male to the female of a "quarter" of cocaine for $650.00. The closing of the sale and the counting of the bills, mostly one hundreds, are audible. The tape recording was authenticated within Rule 901(a). Similarly, it was relevant within Rule 401, Miss.R.Ev., in that it established the corpus delicti and certainly enhanced the likelihood that many facts of consequence in this prosecution were more probable than they would have been without the recording. On the authority of Middlebrook, we reject Doby's present assignment of error.
One point requires note. Doby complains that the recording was not played in open court and seems to suggest that the Court never in fact listened to the tape. We find no indication in the record that the recording was played before the jury and the record is simply silent as to whether the Court listened to it. This is risky business. In cases such as this, we strongly urge the circuit court to listen carefully to the tape before it is received into evidence and, particularly, before the jury is allowed to hear it. In addition, we regard it a better practice that the tape recording be played before the jury by one competent to operate the tape recorder to guard against erasures or other technical *542 or mechanical problems, although there is no error per se in merely giving the recording (or any other exhibit for that matter) to the jury to consider during the course of its deliberations rather than taking up the time of the court to hear it at trial.
These points made, the Circuit Court committed no error when it overruled Doby's objection to the receipt of the tape recording as evidence for the prosecution.

IX.
In conclusion, we hold, under the facts of this case, that the Circuit Court committed no error requiring reversal. Considering Doby's points together, we cannot say with confidence he has experienced legally impermissible prejudice, nor that his right to a fair trial was substantially compromised. Compare Stringer v. State, 500 So.2d 928, 939 (Miss. 1986); Hickson v. State, 472 So.2d 379, 385-86 (Miss. 1985); Barnes v. State, 460 So.2d 126, 135 (Miss. 1984); Collins v. State, 408 So.2d 1376, 1380 (Miss. 1982). Doby has no right to a perfect trial, only a fair one. Shook v. State, 552 So.2d 841, 844 (Miss. 1989); Sand v. State, 467 So.2d 907, 911 (Miss. 1985); Stewart v. State, 229 So.2d 53, 56 (Miss. 1969). He has had his due.
CONVICTION OF SALE OF COCAINE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, SAID SENTENCE TO BE SERVED CONCURRENTLY WITH ANY OTHER SENTENCE DEFENDANT IS NOW SERVING, AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] The cocaine sale at issue today took place on September 16, 1985. Five days earlier Doby sold approximately three grams of cocaine to Agent Conner and, upon conviction, was sentenced to a term of sixteen (16) years imprisonment. This Court affirmed that conviction and sentence on October 12, 1988. See Doby v. State, 532 So.2d 584 (Miss. 1988) ("Doby I").
[2] The transcript of the voir dire examination is not a part of the record on appeal. We take the facts from a recitation made by defense counsel to which neither the Circuit Court nor the prosecution, at trial or on appeal, have taken exception. Indeed, the prosecution briefs the case on appeal as though the facts related above are correct.

We are not clear whether the court reporter failed to transcribe the voir dire examination of the prospective jurors or whether this is yet another case of the court reporter failing to take down notes of the voir dire examination. In his designation of the record on appeal, Doby specifically requested "all notes of the court reporter taken down in connection with all phases of this case, including all pre-trial motions and hearings." There is no explanation why voir dire examination of jurors has been left out.
Because old habits die hard, we reiterate the independent duties of two separate officers of the court. First, the law absolutely obligates the court reporter to take down notes of all proceedings at trial, including the voir dire examination of prospective jurors and to have those notes available in the event of an appeal and, as here, an issue thereon arising at voir dire.
Second, and independently, it is the duty of the appellant to present a record of the trial sufficient to show that the error of which he complains on appeal has occurred and, further, that the error was timely and properly preserved. See, e.g., Queen v. Queen, 551 So.2d 197, 199 (Miss. 1989); Peterson v. State, 518 So.2d 632, 638 (Miss. 1987); Winters v. State, 473 So.2d 452, 457 (Miss. 1985); Dorrough v. State, 437 So.2d 35, 37 (Miss. 1983). Doby did this in short cut form: when Juror Herring made his comment, defense counsel approached the bench and asked leave to move for a mistrial at a convenient time. The Circuit Court allowed this after the jury had been selected. In his ore tenus motion, defense counsel recited the facts which, after the prosecuting attorney had been given an opportunity to object, the Court accepted.
[3] The informant's identity may not be found in the record. There is every reason to believe Doby was well aware, prior to trial, of the identity of the confidential informer. The identity of a black female informant, Darlene Ratcliff, was revealed during Doby's first trial for cocaine possession conducted on September 9, 1986. One might assume that, since Ratcliff was the informant who rode with Conner to Stonewall on September 11, 1985 (date of offense for first conviction), she was also the informant for the September 16, 1985 buy (date of offense for second and present conviction).

In the case sub judice, Doby filed a motion to disclose the identity of the confidential informant. If the prosecution had failed to make discovery, we are confident Doby would have complained both loudly and clearly. He has not done so here.
[4] Under the no-comment rule quoted above, the questions defense counsel asked Conner may have been subject to objection. For reasons not made known, however, the prosecutor sat silently. The prosecution's preferred remedy for the defense foray should have been a timely objection, not to lie back in the bushes and seize upon this as an opportunity to offer otherwise impermissible and prejudicial argument. See Ponthieux v. State, 532 So.2d 1239, 1246-47 (Miss. 1988); Murphy v. State, 453 So.2d 1290, 1294 (Miss. 1988).
[5] We regard disingenuous the suggestion that a confidential informant is as accessible to the defense as to the prosecution. Brown v. State, 200 Miss. 881, 27 So.2d 838 (1946) reminds us

The mere fact that a witness may be hailed into court by the compulsory process thereof at the instance of either party does not necessarily make such witness equally accessible to each, or both.
Brown, 200 Miss. at 887, 27 So.2d at 840. Because "it is against nature to expect a brother to aid the prosecution of his own sister, if he can avoid it," Brown refused to hold a brother a witness "equally available to the state as to his sister defendant." 200 Miss. at 887-88, 27 So.2d at 840. Conversely, it follows that a confidential informant such as the person described by the prosecution below was hardly equally available to Curtis Lee Doby as to the prosecution.
[6] The entire Instruction S-I-A reads as follows:

Instruction S-I-A
The Court instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt that the Defendant, Curtis Lee Doby, in Clarke County, Mississippi, on or about the 16th day of September, 1985, did wilfully, unlawfully, and feloniously sell a quantity, to-wit: approximately 7.0 grams of Cocaine, a Schedule II Controlled Substance, to Donna Conner, in consideration of the sum of Six Hundred Fifty Dollars ($650.00) in good and lawful currency of the United States of America, then it is your sworn duty to find the Defendant guilty.
If you find from the evidence, beyond a reasonable doubt, that the Defendant is guilty, then the form of your verdict may be as follows:
"We, the Jury, find the Defendant guilty as charged."
If you find from the evidence, in this case, that the State has failed to prove the elements of the crime, then you should find the Defendant not guilty, then the form of your verdict may be as follows:
"We, the Jury, find the Defendant not guilty."
Write your verdict on a separate sheet of paper.